1
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
2
TAMPA DIVISION

3   UNITED STATES OF AMERICA,      CASE NO. 8:12-CR-501-T-35AEP

4           Plaintiff,

5    VS.                           Tampa, Florida

6   JOSE MIGUEL CORDERO,           May 16, 2013

7           Defendant.            9:45 a.m.

8   _____/

9                TRANSCRIPT OF SENTENCING PROCEEDINGS
             BEFORE THE HONORABLE MARY S. SCRIVEN
10                UNITED STATES DISTRICT JUDGE

11  APPEARANCES:

12  For the Plaintiff:        MS. JENNIFER PERESIE
                            Assistant United States Attorney
13                           U.S. Attorney's Office
                            400 N. Tampa St., Ste 3200
14                           Tampa, FL  33602
                            (813)274-6000
15                           jennifer.peresie@usdoj.gov

16
    For the Defendant:        ADAM TANENBAUM, ESQUIRE
17                           Assistant Federal Public Defender
                            Federal Public Defender's Office
18                           400 N. Tampa St., Ste 2700
                            Tampa, FL  33602-4726
19                           (813)228-2715
                            adam_tanenbaum@fd.org
20
    Court Reporter:           MS. CLAUDIA SPANGLER-FRY, RPR, RMR
21                           Official Court Reporter
                            801 N. Florida Ave., 7th Floor
22                           Tampa, FL  33602
                            (813)301-5575
23                           cookiefry@aol.com

24

25

CLAUDIA SPANGLER-FRY  OFFICIAL U.S. COURT REPORTER

```
 1                    P R O C E E D I N G S
 2                       May 16, 2013
 3                          *****
 4             THE COURT:  Are counsel prepared to proceed at this
 5   time?
 6             MS. PERESIE:  Yes, Your Honor.
 7             MR. TANENBAUM:  Yes, Your Honor.
 8             THE COURT:  Please swear the Defendant -- yes, I'm
 9   sorry.
10             THE CLERK:  The United States of America versus Jose
11   Miguel Cordero, Case No. 8:12-CR-501-T-35AEP.
12             Counsel, please state your appearances starting with
13   counsel for the United States.
14             MS. PERESIE:  Good morning, Your Honor, Jennifer
15   Peresie for the United States.
16             THE COURT:  Good morning.
17             MR. TANENBAUM:  Good morning, Your Honor, Adam
18   Tanenbaum on behalf of Mr. Cordero who is present standing to
19   my right.
20             THE COURT:  Good morning.
21   Thereupon,
22                     JOSE MIGUEL CORDERO,
23   after having been duly sworn to tell the truth, the whole truth
24   and nothing but the truth, was examined and testified as
25   follows:
```

CLAUDIA SPANGLER-FRY  OFFICIAL U.S. COURT REPORTER

```
 1                  THE DEFENDANT:  I do.

 2                  THE CLERK:  Thank you.  You may be seated.

 3                  THE COURT:  Mr. Cordero, sir, you're under oath.  You

 4    must give truthful answers to the questions that are asked.  If

 5    you give false answers, you face penalties of perjury, false

 6    statement and obstruction of justice.

 7                  Do you understand that?

 8                  THE DEFENDANT:  I do, Your Honor.

 9                  THE COURT:  At the same time, it is not my purpose to

10    induce you to give false answers or mislead you in any way, so

11    if you don't understand what I'm asking you or if you need

12    clarification from your lawyer, ask for a chance to speak with

13    counsel or ask for clarification.

14                  Do you understand that?

15                  THE DEFENDANT:  I understand, Your Honor.

16                  THE COURT:  Are there any preliminary matters from

17    the Government?

18                  MS. PERESIE:  No, Your Honor.

19                  THE COURT:  From the defense?

20                  MR. TANENBAUM:  No, Your Honor.

21                  THE COURT:  Mr. Cordero, on December 10, 2012, sir,

22    you entered a plea of guilty to Count 1 of the Information

23    charging you with access with intent to view child pornography

24    in violation of 18 USC, Section 2252(a)(4)(B) and (B)(2).  The

25    Court has already adjudicated you guilty based upon your plea
```

CLAUDIA SPANGLER—FRY   OFFICIAL U.S. COURT REPORTER

1   before the Magistrate Judge in this case.  It is now the stage

2   in the proceedings where it is my obligation to address the

3   matter of your sentencing.  In that respect, I will ask

4   questions of you, counsel for the Government and your lawyer.

5              Has the Government had an opportunity to read the

6   Pre-Sentence Report?

7              MS. PERESIE:  Yes, Your Honor.

8              THE COURT:  Any objections to the factual accuracy of

9   the report?

10             MS. PERESIE:  No, Your Honor.

11             THE COURT:  As to calculation of the guidelines, any

12  objection?

13             MS. PERESIE:  No, Your Honor.

14             THE COURT:  Ms. Peresie, on reviewing the guideline

15  calculation on yesterday evening, the Court noted there was no

16  enhancement for sadomasochistic conduct as was asserted in a

17  prior similar case, and I viewed the PSI to indicate that there

18  had been images in the video, I guess in the website, that the

19  Defendant was to access that would qualify, and so I'm trying

20  to get an understanding of the differentiation in this case in

21  that respect.

22             MS. PERESIE:  Yes, Your Honor.  The charge here was

23  access with intent to view and that's because we're not sure

24  what if anything was on the -- what exactly was on the website

25  when the Defendant went to access it.  It's clear that there

CLAUDIA SPANGLER-FRY  OFFICIAL U.S. COURT REPORTER

1   was child pornography, but it's not clear, the Government can't

2   prove that there were images of sadomasochistic conduct that he

3   ever actually accessed.

4             THE COURT:  And with respect to the time frame of

5   this offense, did this behavior occur from 2006 through 2010 or

6   did the behavior occur in 2006 and in 2010 based on the

7   Government's evidence?

8             MS. PERESIE:  Your Honor, there were four separate

9   dates in 2006 in which Mr. Cordero paid for access to the

10  website.  And then in 2010, specifically on October 3rd, 2010,

11  Mr. Cordero arrived in Port Canaveral, Florida on a cruise

12  ship, and at that time had the two videos of child pornography.

13            What he told the agent is that this behavior had

14  continued from 2006, the first date in 2006 was July 13th, 2006

15  through 2010, but in terms of evidence, we just have on either

16  end, other than his statements, that it was a continuing

17  period.

18            THE COURT:  And the sexual activity that's referenced

19  in the PSI.  I have the description that's in front of me and

20  then it says generally other sexual activity.  I assume it had

21  not to do with intercourse or penetration with respect to the

22  videos; is that accurate?

23            MS. PERESIE:  That is, Your Honor.

24            THE COURT:  And how did the Government come to know

25  of the video in 2010?  Was it just the normal Customs search

1    that led to that or was there an ongoing investigation?

2           MS. PERESIE:  No, Your Honor, it was a normal Customs

3    search, he came in on the cruise ship and was one of the

4    individuals that was randomly selected for further screening.

5           THE COURT:  All right.

6           Has the defense had an opportunity to review the

7    Pre-Sentence Report?

8           MR. TANENBAUM:  We have, Your Honor.

9           THE COURT:  Any objection to the factual accuracy of

10   the report?

11          MR. TANENBAUM:  No, Your Honor.

12          THE COURT:  Any objection to the calculation of the

13   guidelines?

14          MR. TANENBAUM:  No.

15          THE COURT:  There being no objection to the factual

16   statements and the guideline calculations contained in them,

17   the Court adopts those statements as its findings of fact and

18   determines the advisory guidelines to be as follows:

19          This Defendant faces a total offense level of 21, a

20   criminal history category of I, a recommended term of

21   incarceration of between 37 and 46 months, a five-year to life

22   term of supervision.  Restitution will not apply.  A fine of

23   between $7,500 and $75,000 would be recommended and a $100

24   special assessment would be mandated by law.

25          Are there any victims present in the Courtroom?

CLAUDIA SPANGLER-FRY   OFFICIAL U.S. COURT REPORTER

1    MS. PERESIE:  No, Your Honor.  There actually are no

2    identified victims from the two images, and again, since we

3    don't know what exactly he viewed, there are no victims from

4    that either identified.

5    THE COURT:  Does the defense wish to make any

6    statement in allocution or present any evidence in defense?

7    MR. TANENBAUM:  Yes, Your Honor.

8    THE COURT:  Let me hear from you.

9    MR. TANENBAUM:  Thank you, Your Honor.

10   May I call the individuals who wish to address the

11   Court first?

12   THE COURT:  Yes, sir, you may.

13   MR. TANENBAUM:  Thank you, Your Honor.

14   The first person that Mr. Cordero calls or that I

15   call on his behalf is Shaun Culpepper.

16   THE COURT:  Please come forward to be sworn, sir.

17   Thereupon,

18                      SHAUN CULPEPPER,

19   after having been duly sworn to tell the truth, the whole truth

20   and nothing but the truth, was examined and testified as

21   follows:

22   THE WITNESS:  Yes, I do.

23   THE CLERK:  Please be seated in the witness stand.

24   Please state your full name and spell your last name

25   for the record.

1          THE WITNESS:  My name is Shaun Culpepper, last name,

2   C-U-L-P-E-P-P-E-R.

3          THE COURT:  You may lift the mic up a little bit if

4   you need to, sir.  You're under oath.  You must give truthful

5   answers to any questions that are asked or any statement that

6   you give must be truthful.  If you give false statements, you

7   face penalties of perjury, false statement and obstruction.

8          Do you understand that?

9          THE WITNESS:  Yes, ma'am, I do.

10          THE COURT:  And, sir, how do you know the Defendant?

11          THE WITNESS:  I am Jose Cordero's stepfather.  I've

12   been married to his mother, Catherine, since 1987, and I've

13   known and helped raise Jose since 1985.

14          THE COURT:  All right.

15          And you'd like to make a statement on his behalf?

16          THE WITNESS:  Yes, ma'am.

17          THE COURT:  I'll hear from you now, sir, thank you.

18          THE WITNESS:  Thank you.

19          We've always been proud of Jose and it is perplexing

20   to us as a family to try to understand how he came to you

21   today.  It's -- he's -- we understand the charges against him

22   and I would like to think that this one act does not define him

23   as a man.  There's been goodness in his life.  He's the same

24   person that you see here today with these charges that's --

25   when his wife told him that the markers for the prenatal

CLAUDIA SPANGLER-FRY   OFFICIAL U.S. COURT REPORTER

1  screening for his son showed that the child would most likely

2  have Downs Syndrome, he never wavered on his commitment to keep

3  the child and to carry through on the pregnancy.

4          He has respect for life, Your Honor.  He's a good

5  grandson who my wife's parents have been ill for the last two

6  years, in and out of the hospital, he's the grandson that goes

7  by and mows the yard and picks up their medicines and makes

8  sure they're safe.  And I think to truly understand Jose, you

9  just need to spend a little bit of time with him and his son,

10  Jonathan, and you'll see that there is grace and redemption in

11  this man and he is not a threat to society.

12          He's not a bad man who hides behind good deeds.  He

13  made a terrible mistake and he's paid the price and his family

14  has paid the price.  He's lost his reputation, he's lost his

15  job, he lost a good career, he's in financial ruin, but through

16  this difficult time, he's not abandoned his family, he's been

17  supportive, he still finds a way to provide for them

18  financially.

19          And I think as you may be looked to sentencing Jose

20  today, please consider I think that he is key in the

21  developmental continuation of his son, Jonathan, and as a

22  family, we would ask for whatever leniency the Court allows.

23          And as his stepfather, if there's some way that I can

24  take responsibility for Jose in this process, I'd be willing to

25  do that, Your Honor.  Thank you.

CLAUDIA SPANGLER-FRY  OFFICIAL U.S. COURT REPORTER

```
 1                THE COURT:  Thank you.

 2                Anything further from the Government or the defense

 3     from this witness?

 4                MS. PERESIE:  Nothing from the Government, Your

 5     Honor.

 6                MR. TANNENBAUM:  Nothing from the defense.  Thank

 7     you, Your Honor.

 8                THE COURT:  Thank you.  May step down, sir.

 9                Any other witnesses?

10                MR. TANENBAUM:  Yes, Your Honor, may I call Cathy

11     Walker?

12                THE COURT:  Please come forward to be sworn.

13     Thereupon,

14                          CATHERINE WALKER,

15     after having been duly sworn to tell the truth, the whole truth

16     and nothing but the truth, was examined and testified as

17     follows:

18                THE WITNESS:  Yes, I do.

19                THE CLERK:  Please be seated in the witness stand.

20                THE WITNESS:  I hurt my Achilles.

21                THE COURT:  I'm sorry.

22                THE CLERK:  Please state your name and spell the last

23     for the record.

24                THE WITNESS:  Catherine Walker, W-A-L-K-E-R.

25                THE COURT:  Ms. Walker, you're under oath.  You must
```

1    give truthful answers to the questions that are asked and any

2    statement that you give must be truthful.  If you give false

3    statements, you face penalties of perjury, false statement and

4    obstruction.

5            Do you understand that?

6            THE WITNESS:  Yes.

7            THE COURT:  How do you know the Defendant?

8            THE WITNESS:  I'm his aunt.

9            THE COURT:  And you'd like to be heard on his behalf?

10           THE WITNESS:  Yes.

11           THE COURT:  You may proceed.

12           THE WITNESS:  I'd like to say that we have more of a

13   relationship as I think of him more as a son as far as our

14   relationship goes.  He's our -- my closest nephew.  So we've

15   always had a very, very close-knit family and relationship.

16           With respect to himself as an individual, I've been a

17   part of his life from birth throughout.  He was my child before

18   we had our own, so I spent a lot of time with him as an

19   individual and on a one-on-one relationship.  And he has always

20   been a young man of integrity, even with the situation with

21   this Court, we would have chosen to have different

22   representation, his own integrity said, I'm going to do it this

23   way and that speaks a lot of his character.

24           He is the type of individual who works 14 hours a day

25   to provide for his family and then goes to his grandparents'

CLAUDIA SPANGLER-FRY  OFFICIAL U.S. COURT REPORTER

1    house and works over there.  Both his grandparents are at a
2    place where their health is not strong.  As a grandson, he is
3    always visiting them, doing whatever he can to help on his own
4    without provocation because he loves them.  And he is
5    completely dedicated to his family, not just his wife and his
6    son, for his extended family.  We are some 40 some odd people,
7    we still get together for every single birthday, we support
8    each other in all aspects.  If you're in trouble, you're in
9    trouble with the whole family, not just the individuals.
10            So, I do believe in justice and I do not believe that
11   justice will be served if he is removed from his family for
12   this mistake.  He is completely committed.  He's an individual
13   who belongs to his church, is committed to help anybody.  I
14   mean, I've seen him help strangers and do what he can.
15            We've been involved in every part of his life, good
16   and bad, because that's the kind of family we are.  We were
17   very proud of him when he got his wings, wanted to serve his
18   country and felt like he -- his mission in life would be to
19   help save people while serving his country.  Those are
20   honorable, very honorable qualities and I would do anything for
21   him, but I would not lie for him or give false testimony for
22   him or anyone else.
23            And I believe that there is no threat here, this was
24   a mistake, and that it would be more of an injustice to his
25   family, his wife, his son, his daughter that's coming and the

CLAUDIA SPANGLER-FRY  OFFICIAL U.S. COURT REPORTER

1   rest of us to be without him in our life because of this one

2   error.

3           THE COURT:  You understand that his conduct is not a

4   single incident, that it occurred over a period of four to five

5   years?

6           THE WITNESS:  I did not understand there were

7   multiple situations that had occurred.

8           THE COURT:  Well, apparently, this started in '06,

9   and according to his statement, lasted until he was caught in

10  2010.

11          Do you have daughters and nieces?

12          THE WITNESS:  Yes, I do, I have daughters.  He has

13  spent time in my home.

14          THE COURT:  If those daughters and nieces had been

15  raped by adults and they had videotaped those rapes, repeated

16  rapes, and played them on the Internet and someone had accessed

17  them for their sexual or other deviant pleasure, what would you

18  think about their otherwise stellar life in regard to the

19  Court's consideration of punishment for them?

20          THE WITNESS:  I would consider that to be evaluated

21  by a psychologist to see if there's deep root.  I think that is

22  horrible, crimes against children are horrible.  I had a

23  situation in my own neighborhood where a convicted pedophile

24  was -- did time, was a horrible crime, and as a person who

25  believes that those who are repentant and willing to change

CLAUDIA SPANGLER-FRY  OFFICIAL U.S. COURT REPORTER

 1   their life and get any kind of help, they deserve a chance.
 2   And this individual did get from his neighborhood a chance to
 3   be accountable to his neighbors for our benefit and our
 4   children's safety, obviously.  I was very fearful for a long
 5   time and we did ask the individual, don't go by the -- don't go
 6   by the bus stop.  If you're going to be out in the
 7   neighborhood, there were several men in the neighborhood who
 8   said, make yourself accountable to us so that we can make sure
 9   that we have the comfort and you are truly someone who is not
10   going to act on those things.  It's a very difficult situation
11   for all of us in the neighborhood.
12            But I do believe that if this individual had truly
13   gotten help, he was convicted, he did time, he took a six year
14   old out into the woods and did horrible things to her.  And
15   even at that, after his Court sentence, as an individual, and
16   as a neighborhood, we were willing to give this individual the
17   chance to prove that this is not a problem.
18            THE COURT:  Okay, thank you.
19            THE WITNESS:  You're welcome.  Thank you for letting
20   me speak.
21            THE COURT:  Thank you.
22            Anyone else?
23            MS. PERESIE:  Your Honor, defense counsel has asked
24   me to just clarify to make sure my statements were clear.  The
25   possession occurred from 2006 to 2010.  There's no indication

CLAUDIA SPANGLER-FRY  OFFICIAL U.S. COURT REPORTER

| | |
|---|---|
| 1 | that the Defendant paid for access after 2006, just that over |
| 2 | this five-year period that he was possessing and accessing the |
| 3 | child pornography. |
| 4 | THE COURT:  All right. |
| 5 | MR. TANENBAUM:  Your Honor, may I call one final |
| 6 | witness, Amanda Cordero? |
| 7 | THE COURT:  Please come forward to be sworn. |
| 8 | Thereupon, |
| 9 | AMANDA CORDERO, |
| 10 | after having been duly sworn to tell the truth, the whole truth |
| 11 | and nothing but the truth, was examined and testified as |
| 12 | follows: |
| 13 | THE WITNESS:  Yes, I do. |
| 14 | THE CLERK:  Please be seated in the witness stand. |
| 15 | Please state your name. |
| 16 | THE WITNESS:  My name is Amanda Cordero. |
| 17 | THE COURT:  Ms. Cordero, you're under oath.  You must |
| 18 | give truthful answers to the questions that are asked, and any |
| 19 | statement that you give must be truthful.  If you give false |
| 20 | statements, you face penalties of perjury, false statement and |
| 21 | obstruction of justice. |
| 22 | Do you understand that? |
| 23 | THE WITNESS:  Yes, I do. |
| 24 | THE COURT:  And how are you related to the Defendant? |
| 25 | THE WITNESS:  I am his wife. |

1          THE COURT:  How long have you been married?

2          THE WITNESS:  We have been married for three and a

3    half years.

4          THE COURT:  And you'd like to make a statement on his

5    behalf?

6          THE WITNESS:  I would, Your Honor.

7          THE COURT:  I'd like to hear it.

8          THE WITNESS:  I typed something up to help me keep

9    from getting too emotional about this.  I have known Jose

10   Cordero for 11 years, six of those 11 years we've been in a

11   relationship together.  Whether boyfriend or girlfriend or

12   married, I have always known Jose to be an honest hard working

13   and caring man.  In fact, he is one of the few people I've ever

14   known to be truly selfless.  He goes out of his way to take

15   care of the people around him, his friends, his family.  He is

16   a man of God and he's a defender of his country.  He's always

17   been a protector, a provider and a leader.  He is faithful and

18   loyal, and in the 11 years I've known him, he has always been a

19   responsible and law abiding citizen.

20          I am aware of the charge against him.  I am also

21   aware of his moral character.  If at any moment in time I

22   thought that he had a problem or a perversion, I never would

23   have married him or started a family with him.  Even after

24   knowing about the charge, I have continued to build my family

25   with him and we're having another child.  It's because I know

CLAUDIA SPANGLER-FRY   OFFICIAL U.S. COURT REPORTER

```
 1    he is not a threat.  He's never once exhibited any behavior
 2    that would make me think otherwise.  And I do have an uncle on
 3    my father's side that does have those problems, so it's
 4    something I have been able to recognize.
 5              He is the leader of our family.  He provides for us
 6    in ways that stretch beyond the financial.  He is my spiritual
 7    leader and my friend.  He's shown me more love and compassion
 8    than I thought could ever exist in a man.  Not everyone can
 9    look at a baby with Downs Syndrome and love them like they were
10    the most perfect thing ever created.  He is our strength and
11    our livelihood.  This family does not work without him.  And
12    given the loss of finances, friends, and the reputation he had,
13    we have already lost so much due to this charge.  I don't know
14    that our family can take much more.
15              This baby and Jonathan and I need Jose as much as he
16    needs us to be together as one cohesive unit.
17              THE COURT:  Anything from the Government?
18              MS. PERESIE:  No, Your Honor.
19              THE COURT:  Anything further from the defense?
20              MR. TANENBAUM:  No, Your Honor, thank you.
21              THE COURT:  Thank you.  You may step down.
22              THE WITNESS:  Thank you.
23              THE COURT:  Anything further from the defense?
24              MR. TANENBAUM:  Only Mr. Cordero at the appropriate
25    moment.
```

CLAUDIA SPANGLER—FRY  OFFICIAL U.S. COURT REPORTER

1          THE COURT:  That would be now.

2          MR. TANENBAUM:  Okay, thank you.

3          Mr. Cordero would like to address the Court.

4          THE COURT:  Yes, sir?

5          THE DEFENDANT:  Here or -- Your Honor, I'd just like

6     to say that I've made some decisions that have not been the

7     best decisions in my life.  I'm truly sorry for the things that

8     I've done in reference to this count that's currently against

9     me today.

10          I would say outside of this, I've lived a life that

11     has been complimentary to everyone around me and serving my

12     country for over 12 years, both as an enlisted and as an

13     officer as a medivac pilot.  I've tried to always be a selfless

14     and helpful person and in community service the different

15     things that I've done, and always helping a friend or just

16     someone on the side of the road in need of help.

17          I feel horrible for the things that I've done for I

18     know that by contributing to these things, it only serves to

19     exacerbate the problem that exists in the world today.  It only

20     continues to give these people that will do these heinous acts

21     either the funding or desire to continue to do it more as they

22     feel that other people share the same beliefs as them.  I,

23     myself, Your Honor, do not share those beliefs.

24          THE COURT:  Well, then explain to me how -- why we're

25     here.  I don't understand.


                CLAUDIA SPANGLER-FRY  OFFICIAL U.S. COURT REPORTER

```
 1              THE DEFENDANT:  Your Honor, I -- all I can say on my
 2   behalf is I did something stupid.  I went to a place that I
 3   shouldn't have been.
 4              THE COURT:  You went to a pedophile website.  Just
 5   say the words.
 6              THE DEFENDANT:  Well, I went to a website, Your
 7   Honor, originally that I thought did not have small aged
 8   children.  I thought they were later teens --
 9              THE COURT:  They're still kids, they're still kids.
10   It's not okay if they're teens or 13 or 15, if they are under
11   the consenting age, they're children.  So I don't understand
12   how going looking for little girls as opposed to little babies
13   justifies the conduct.
14              THE DEFENDANT:  Nothing justifies the conduct, Your
15   Honor.
16              THE COURT:  Well, tell me what was going on.
17              THE DEFENDANT:  I'm not sure, Your Honor.  All I can
18   say is that it was just a complete lapse in judgment.
19              THE COURT:  For five years?
20              THE DEFENDANT:  Well, I didn't have access to it for
21   five whole years, Your Honor.
22              THE COURT:  How long did you have access to it?
23              THE DEFENDANT:  I'm not sure the exact time period of
24   how long the sites I had access to.  I would say a year maybe.
25   That was how long I had access to that.
```

CLAUDIA SPANGLER-FRY   OFFICIAL U.S. COURT REPORTER

1          THE COURT:  So why did you have them on your cruise

2  with you?

3          THE DEFENDANT:  They were still on the computer from

4  when I had originally accessed them, and I had the lap-top with

5  me to study on a cruise because I had my upcoming evaluation in

6  the Army, so I had brought along study materials for my pilot's

7  certifications that I had to do --

8          THE COURT:  But you're not suggesting that you

9  weren't looking at the films.  You know how to delete things

10  from your computer?

11          THE DEFENDANT:  I was told that it was some sort of

12  cache file that I have no idea even existed, Your Honor.

13  Obviously, if I would have known something of that was on my

14  computer, I would have deleted it, I just didn't know it even

15  exited in any capacity.

16          THE COURT:  So your testimony is that it was just

17  there and you had not accessed it, it just was in your

18  possession?

19          THE DEFENDANT:  Yes, yes, Your Honor.  I would try to

20  in any way to serve for what I have done wrong here.  Like the

21  previous people have said, we've lost a lot already, and the

22  fact that my military career and my retirement has been taken

23  away, all our benefits.  I went from earning over a hundred

24  thousand dollars a year to now barely making $15,000 a year to

25  just scrape by.  My wife doesn't currently work, she's a full

CLAUDIA SPANGLER-FRY  OFFICIAL U.S. COURT REPORTER

1    time student.  So my income is what wholly supports our family.

2         I've tried to make all the effort that I can and I

3    would be more than willing to make any efforts in the community

4    to help with this situation.  I feel absolutely horrible about

5    it.  Obviously, we can't take back the things we've done and

6    all I can do at this point is make the past the past and move

7    forward with my life and continuing to take care of my

8    soon-to-be two children and my wife.

9              THE COURT:  Thank you.

10             Anything further from the defense or the Government?

11             MR. TANENBAUM:  Your Honor, I have nothing further to

12   offer in terms of testimony and I made the arguments in my memo

13   and I understand the Court's probably read it.  I'm not going

14   to -- I made the arguments in the memo.  Thank you, Your Honor.

15             THE COURT:  All right.

16             Any response from the Government?

17             MS. PERESIE:  Yes, Your Honor.

18             The United States is recommending a guideline

19   sentence with the lifetime supervised release.  Candidly, Your

20   Honor, this is one of the more difficult cases I've prosecuted

21   because although many people come before the Court and have a

22   purported explanation for why they were initially downloading

23   child pornography, it does appear that in 2006, Mr. Cordero was

24   admirably serving in the military and also experiencing marital

25   problems.  That being said, this is also the first case that

CLAUDIA SPANGLER-FRY  OFFICIAL U.S. COURT REPORTER

1   I've had, and I deal with a lot of these cases, where an

2   individual actually paid for that child pornography and paid

3   for the child pornography not once, but four times, and kept

4   the child pornography and the child pornography wasn't some

5   hidden away thing on the computer, it was in the allocated

6   space, I'm not sure precisely where, I don't have the agent

7   here, but it was in the allocated space of the computer.

8              That being said, it was only two videos.  And as the

9   Court is aware, many individuals have much larger collections.

10  So, candidly, it's hard to tell whether this was some sort of

11  isolated instance and it defies my logic why Mr. Cordero kept

12  these videos, kept these videos that he paid to look at and --

13             THE COURT:  Well, when you say it was in an allocated

14  space, what does that mean?

15             MS. PERESIE:  So the allocated space is distinguished

16  from the unallocated space.  Allocated space is actually what

17  one can access on the computer and that's what is found --

18             THE COURT:  Well, he says it was in a cache file

19  giving me this impression that it had just been viewed and

20  saved by some automatic save system and that it was just on his

21  computer.  Is there any indication when he last accessed this

22  file on his computer when it was located by the agents?

23             MS. PERESIE:  There is not, Your Honor.

24             THE COURT:  Is there a way to determine that and it

25  just wasn't done?

CLAUDIA SPANGLER-FRY  OFFICIAL U.S. COURT REPORTER

1          MS. PERESIE:  Yes, Your Honor.  Unfortunately, and
2     this is one of the reasons this case was pled, as you can see,
3     I don't have an agent here today, there's actually no agent
4     even on the case.  At current, I don't have the forensic skill
5     to be able to do this, so we're relying a lot on Mr. Cordero's
6     statement that he possessed the images during that time period.
7          What we know for certain, Your Honor, is that he paid
8     four times in 2006 to access it and he had these two videos
9     which he had accessed.  We also know for certain that he did
10    have an admirable military background, and for that reason, as
11    defense indicates in their memo, the Government is not opposing
12    some departure under 5(h)1.11 based on his military history.
13    This is someone who was repeatedly commended by his supervisors
14    who served --
15          THE COURT:  Is the Government opposing the requested
16    12 months and a day, one year and a day?
17          MS. PERESIE:  Your Honor, the Government would not
18    oppose a two-level departure which would take us from 37 to 46
19    months down to 30 to 37 months.  That being said, I don't
20    disagree with most of what is in Defendant's memo.  This is an
21    individual who has, as we've heard, served admirably in the
22    military, who does seem to have turned his life around.  Even
23    if he was still looking at those images in 2010, it is clear
24    that between 2010 and 2013, he hasn't been looking at child
25    pornography, there's no evidence that Mr. Cordero ever engaged

CLAUDIA SPANGLER-FRY   OFFICIAL U.S. COURT REPORTER

1   in any contact offenses, and he, both in representations to
2   this Court and also in speaking to us what led to pleading to
3   an Information, has always impressed upon me someone who knows
4   that this is wrong, who knows and whether that's convenient now
5   that he's been found, I think whatever the initial reason for
6   it, Mr. Cordero is a changed man.

7        I do not think that Mr. Cordero is going to continue
8   accessing child pornography.  And so, I agree with what the
9   defense wrote in its memo.  I do think that whatever sentence
10  the Court imposes, it is important to have the lifetime
11  supervised release.  When we look at the case Defendant cited
12  in his memo, *United States versus Pugh*, that case speaks to the
13  importance of a lengthy term of supervised release.  And that's
14  because there is a problem of recidivism.  The research shows
15  that people who access these images continue, whatever the
16  issue is that led them to it, they continue to look at these
17  images.  And there's also, of course, the concern of some sort
18  of hands-on offense, and as the Court in *Pugh* notes, is why
19  Congress and the Sentencing Commission have both expressed a
20  preference for lifetime supervised release.

21       It's not intended as a penalty when we look at the
22  3553 factors, it's intended to be part of the treatment.  And
23  that's what Mr. Cordero needs most.  So whatever sentence the
24  Court imposes, he really needs that lifetime supervised
25  release.

1          With respect to the facts, I do want to note that

2    there's no indication as well that Mr. Cordero ever distributed

3    any of these images.  At the time of the plea, Mr. Cordero

4    actually admitted in the plea agreement that he had used a

5    program called LimeWire, and had downloaded two of the files

6    from LimeWire.  That's on page 20 of the plea agreement.  That

7    statement and additional review of the evidence has shown is

8    not correct.

9          So, Mr. Cordero's actions were paying for the access

10   to the website in 2006 and then continuing to possess these

11   files from 2006 to 2010, which is certainly a serious offense,

12   the seriousness Mr. Cordero notes, and that's why the

13   Government is recommending the guidelines and then specifically

14   lifetime supervised release -- the guidelines, minus the two

15   levels.

16          THE COURT:  Thank you.

17          Anything further from the defense?

18          MR. TANENBAUM:  Just to clarify just two small points

19   and then I'm going to sit down, if I may.

20          THE COURT:  Yes, sir?

21          MR. TANENBAUM:  First, about the LimeWire reference

22   in the plea agreement, the reason that Mr. Cordero signed it

23   and agreed to those facts, despite the fact that he denied ever

24   using LimeWire, is because the wording is that the agents or

25   one of the reports said that he was using LimeWire.  One of the

1    initial reports that we received indicated LimeWire, but as it

2    turns out, the report from Brevard County Sheriff's Office,

3    that was the wrong report.   Nevertheless, an agent said that

4    there was LimeWire and that was true and that's why Mr. Cordero

5    agreed to that fact even though he didn't agree that he

6    actually used LimeWire.

7            Related to that, Your Honor, there is some confusion

8    as to -- there's some unclarity as to how long this offense

9    continued.   Mr. Cordero certainly admitted and certainly did

10   access in '06, probably in '07 as well.   The forensics, as Ms.

11   Peresie indicated, is lacking.   We don't know and there is no

12   access date.

13           And a cache file, to answer the Court's question from

14   before, based on my experience, is part of the allocated space,

15   and so it is possible for when someone accesses the Internet,

16   views a video online, traditionally or typically, those videos

17   will be downloaded into the computer either in a temporary

18   file, an Internet file or something like that, and it's about

19   two or three levels down at a minimum in the directory.   So

20   it's possible for someone to look at the Internet, view a

21   video, which Mr. Cordero has admitted to doing, possible for

22   that to be on the computer and also possible for that person

23   not to know that it was still there.

24           Honestly, Your Honor, whatever is true, I don't think

25   it minimizes -- we're not trying to minimize the seriousness of

CLAUDIA SPANGLER-FRY   OFFICIAL U.S. COURT REPORTER

1    the offense, whether he accessed it just in '06, accessed in

2    '06 and '07 or beyond that, Mr. Cordero acknowledges, as I

3    think we all do, it's a serious offense, it's serious whether

4    you access it once, look at it once and Mr. Cordero has already

5    addressed the real why it is so serious, why it's wrong and

6    what happens when someone accesses the Internet.

7            We ask the Court to take that into consideration when

8    imposing a sentence.

9            Thank you, Your Honor.

10           THE COURT:  Thank you.

11           (Brief pause.)

12           Any reason why the Court should not now proceed to

13   the imposition of judgment from the Government?

14           MS. PERESIE:  Your Honor, I believe Mr. Tanenbaum has

15   something to say.

16           MR. TANENBAUM:  And I'm sorry, Your Honor, and I --

17   just from being new in this Courtroom, I wanted to make the

18   request now 'cause I don't know if I'll have an opportunity

19   later, request self surrender for Mr. Cordero and Coleman as

20   the institution.  I wasn't sure when we might be able to

21   address that issue after the fact.

22           THE COURT:  My understanding is that the law mandates

23   his incarceration today absent a motion from the Government.

24           Does the Government intend to make a motion on his

25   behalf for self surrender?

CLAUDIA SPANGLER–FRY  OFFICIAL U.S. COURT REPORTER

1    MS. PERESIE:  We do not, Your Honor, and the law does

2  mandate it absent a proof by clear and convincing evidence from

3  the Defendant that he's not a risk of flight or a danger to the

4  community under 3143.

5    MR. TANENBAUM:  And that's the issue I wanted to

6  address, Your Honor.  I disagree with the Pre-Trial Services'

7  reading of 3143 and I guess the Government's reading of whether

8  this is a crime of violence or not.  And I assert that

9  attempted access or access of the Internet doesn't fit the

10  definition under Section 16, USC, Title 18, which --

11    THE COURT:  All right.

12    I'll take that up in a second.

13    MR. TANENBAUM:  Thank you.

14    THE COURT:  Sir, would you please stand.

15    Mr. Cordero, the Court has considered the statements

16  of the parties with respect to the matter of sentencing in this

17  case, I have reviewed the Pre-Sentence Report and the advisory

18  guidelines, I have considered the recommendation of the Office

19  of Probation, I have considered 18 USC, 3551 and 3553, and it's

20  the judgment of this Court, based upon that consideration, that

21  this Defendant, Jose Miguel Cordero, is hereby committed to the

22  custody of the Bureau of Prisons to be incarcerated for a term

23  of 12 months and one day.  You may be seated.

24    Upon release from incarceration, you will serve a

25  10-year period of supervision.  While on supervision, you will

comply with standard conditions adopted by this Court in the Middle District of Florida.  You will participate in a mental health care treatment program as dictated by the Office of Probation bearing the cost of that as the Office of Probation deems to be appropriate.

You will register as a sex offender with any State agency that so requires.  You will provide State officials with all information necessary to satisfy the requirements of the Adam Walsh Act as it is so called.  You will have no direct contact with minors under the age of 18 other than your own children without approval of the Office of Probation.  You will refrain from entering any area where children frequently congregate including schools, DayCare centers, theme parks, playgrounds and the like.  You will be prohibited from possessing, subscribing to or viewing any video images of material depicting children in the nude or in sexually explicit positions.  You will not possess a computer with access to any online service without the written approval of the Office of Probation.  The Court will not impose this computer restriction during the time of the Defendant's incarceration.

You will submit to a search of your person, residence, place of business and any storage unit under your control, any computer or any vehicle in order to allow Probation to insure that you are complying with terms and conditions upon their reasonable suspicion that you are in

1  possession of contraband or are violating the terms of your
2  order of supervision.
3          If you fail to submit to such a search or persons
4  with whom you reside refuse to permit such a search, it could
5  be grounds for revocation.  You will provide the Probation
6  Officer access to any requested financial information.  You are
7  a convicted felon and as a result, you must cooperate in the
8  collection of DNA as directed by the Office of Probation.  The
9  mandatory drug testing requirements of the VCCA are waived.
10  Probation, however, may require you to submit to random drug
11  testing as it believes to be appropriate not to exceed 104
12  tests per year.  The financial status of the Defendant renders
13  a fine inapplicable and it is therefore waived.  The Court
14  requires the Defendant to forfeiture any asset that has been
15  submitted for forfeiture including the lap-top computer that
16  was seized at the time of his initial encounter with law
17  enforcement.  You will pay a $100 special assessment as
18  directed because that is statutorily mandated and it is due
19  immediately.
20          Having considered the advisory sentencing guidelines
21  and all of the factors identified therein, the Court finds the
22  sentence imposed is sufficient but not greater than necessary
23  to comply with the statutory purposes of sentencing.
24          To the extent that this sentence reflects a
25  substantial variance, it is unusual, this Court finds the case

falls far outside the heartland of cases that this statute was intended to reach.  This Defendant, from the evidence that we have accessed, this information in 2006 and remained on his computer, the Court has no evidence that it was viewed from the time that it was initially placed on the computer up and through today's date.  The Defendant has, by the Government's agreement, not accessed any information at anytime since he has been arrested.

The substantial Sexual Offender Evaluation Risk Assessment that was prepared in this case by the psychologist indicates that this Defendant is not a predator, he's not a sexual deviant by the information that is provided in his answers apparently candid to the evaluative process.  The Court accepts, though, that evidence as uncontroverted on this record.  The Defendant has also made strides at rehabilitation since the time of his arrest and he has a substantial support of his community.  The Court also takes into consideration his stellar service to the country and the support of his family in his successful matriculation through the prison system and his successful reentry into the community without incident and even the Government seems to concede the Defendant is not a risk for recidivism in this circumstance and there's no evidence that he has made any inappropriate actual physical contact with any child.  And for those reasons, the Court believes that the substantial variance is proper in this case and is justified

CLAUDIA SPANGLER-FRY   OFFICIAL U.S. COURT REPORTER

1    under the factors.

2           The Court does not impose a lifetime of supervision.

3    I believe 10 years will be sufficient.  If the Defendant

4    violates in the 10-year period, the Government would have

5    recourse against this Defendant in the way of a violation and

6    in the way of additional charges.  And to the extent that it is

7    designed for treatment, the evidence here is the Defendant is

8    an unlikely candidate for any actual sexually deviant behavior.

9    That being said, the Court says we don't know enough and so

10   watching the Defendant for the 10 years after he is released

11   will provide the Court with reasonable assurance that he is no

12   longer a risk to the community.

13          The Court has accepted the plea agreement because I'm

14   satisfied that it adequately reflects the seriousness of the

15   actual offense behavior and that accepting it will not

16   undermine the statutory purposes of sentencing.

17          The Court would recommend, if that is the Defendant's

18   request, that he be placed at Coleman.  I'm not sure that would

19   be my choice for this Defendant.  It is within the reasonable

20   close proximity to family, but it is a facility that has a

21   fairly substantially higher percentage of hardened criminals as

22   I understand it, and a prison camp might be more appropriate

23   for this Defendant for this period that he will be

24   incarcerated.

25          You will be released on terms and conditions, Mr.

CLAUDIA SPANGLER-FRY  OFFICIAL U.S. COURT REPORTER

1   Cordero.  You will be supervised for a period of 10 years.  If
2   you violate your supervision in any respect, you will be back
3   before the Court, not just in the behavior that brings you
4   here, but in any other respect; drug use, whether it is
5   prescription drugs that are being misused or behavior of any
6   type, driving while under the influence of alcohol, any other
7   behavior of that type will bring you back before the Court and
8   you will not be dealt with with any leniency in light of the
9   substantial break that is extended to you at the time of this
10  sentencing.
11          Do you understand that?
12          THE DEFENDANT:  I do, Your Honor.
13          THE COURT:  And I don't know the answer to this legal
14  question.  Is there some legal authority for the notion that
15  attempted access of the Internet is not a violent offense
16  subject to the mandatory remand statute?
17          MR. TANENBAUM:  Your Honor, quite frankly, I wasn't
18  aware it was going to be an issue until this morning, but --
19          THE COURT:  I don't know why you wouldn't have been
20  aware of that since remand is always an issue.
21          MR. TANENBAUM:  I acknowledge that, Your Honor.  I
22  had had conversations with the Government --
23          THE COURT:  Is the answer no, you don't know of any
24  cases that deal with it?
25          MR. TANENBAUM:  I do not know of a case.  I'm only

CLAUDIA SPANGLER-FRY   OFFICIAL U.S. COURT REPORTER

1   relying on a plain reading of the two statutes, 3143 and

2   Section 16, Section 16 referencing the actual elements of the

3   offense or --

4           THE COURT:  Ms. Peresie, you have any authority?

5           MS. PERESIE:  Your Honor, I don't other than the

6   general authority that child pornography offenses are crimes of

7   violence.  I do think that this is one of the rare cases where

8   the Defendant could meet his burden of showing by clear and

9   convincing evidence that he would surrender and --

10          THE COURT:  Does the Government oppose his self

11  surrender?

12          MS. PERESIE:  No, presuming that the defense offers

13  some argument on those factors, the Government does not oppose

14  the self surrender.

15          THE COURT:  Yes, sir?

16          MR. TANENBAUM:  Thank you, Your Honor, and thank you

17  to the Government for giving me this opportunity.

18          With respect to Mr. Cordero and his -- the risk

19  factors, aside from the evidence that we've already presented

20  with respect to the sentencing, Mr. Cordero has been under

21  intensive supervision up to now under Pre-Trial Services,

22  including with electronic monitoring.  He's done everything he

23  was supposed to do.  He has an extensive family support

24  network, some of whom -- actually a number of whom -- we have

25  two rows of people in the back all support him.  He's got

```
 1    the -- he's responsible for the care of his special needs child
 2    and a pregnant wife.  He has immediately taken
 3    responsibility -- excuse me -- he took responsibility for this
 4    offense early on in the process.  He's voluntarily come to
 5    Court and waived even Indictment and come into Court
 6    voluntarily and done everything he was supposed to do.  And I'm
 7    unaware of any incident that even suggests a violation of the
 8    terms and conditions of his release.
 9              THE COURT:  Is he on a signature bond or cash bond on
10    his supervision?
11              MR. TANENBAUM:  It's a signature bond, Your Honor.
12              THE COURT:  Who signed for it?
13              THE DEFENDANT:  No one else signed for it, Your
14    Honor.
15              MR. TANENBAUM:  It was -- there was no third party
16    signature or co-signature, excuse me.
17              THE COURT:  Would your stepfather be willing to
18    co-sign?
19              THE DEFENDANT:  I believe so, Your Honor.
20              MR. TANENBAUM:  I think he would, Your Honor.
21              THE COURT:  Would you speak to him?
22              MR. TANENBAUM:  I would.  May I?
23              THE COURT:  Yes, sir, you can step out.
24              (Brief pause.)
25              MR. TANENBAUM:  Your Honor, I have spoken with
```

CLAUDIA SPANGLER-FRY  OFFICIAL U.S. COURT REPORTER

```
 1   Mr. Culpepper, the stepfather.  I have explained what his
 2   responsibilities would be with respect to Mr. Cordero and the
 3   risks if Mr. Cordero did not attend the Bureau of Prisons as
 4   designated at the time as designated.  He understands those
 5   risks and responsibilities and has indicated he's willing to
 6   accept them.
 7             THE COURT:  What is the amount of the signature bond?
 8             MS. PERESIE:  $10,000, Your Honor.
 9             THE COURT:  All right.
10             Anything from the Government?
11             MS. PERESIE:  No, Your Honor.
12             THE COURT:  This Defendant, I believe, has met the
13   fairly significant showing that is necessary to meet the
14   statute if the statute, in fact, does apply.  I think that the
15   risk of absconding is greater than the sentence imposed, and it
16   would be unlikely under the circumstances that he would not
17   appear.  He has shown himself to be compliant in every respect
18   from the time of his original encounter up through and
19   including today's appearances and he does have the support of
20   the family and he has other ties to the community that would
21   hold him here, and the Court would consider even further
22   assurance with the enhancement of his signature by the
23   co-signature of Mr. Culpepper.
24             Sir, would you stand, Mr. Culpepper.  The Court is
25   requesting that the Defendant present someone who is willing to
```

CLAUDIA SPANGLER-FRY   OFFICIAL U.S. COURT REPORTER

```
1    co-sign his bond.  Right now, he's said on his own word that if
2    he doesn't appear, he will forfeit $10,000 to the Court, and of
3    course, that is of little value 'cause he doesn't have $10,000
4    based upon his representation here, but if you would co-sign
5    this bond, it would provide additional assurance to the Court
6    that he would put someone he apparently loves and values at
7    risk for 10,000 should he fail to appear and report to the
8    place of incarceration at which he is directed.
9              Do you understand that risk?
10             THE WITNESS:  Yes, I do, Your Honor.
11             THE COURT:  And are you willing to undertake that
12   risk on his behalf in order to allow him to be released to self
13   report at a designated time?
14             THE WITNESS:  Yes, ma'am.
15             THE COURT:  All right.
16             The Court would ask you to stay and sign the
17   appropriate paperwork for that purpose and the Court on that
18   basis would grant the Defendant the ability to self surrender.
19   Thank you.
20             THE WITNESS:  Thank you.
21             THE COURT:  Do we know what time frame we're looking
22   at?  When is the baby due?
23             THE DEFENDANT:  The baby is not due for another four
24   months, Your Honor.
25             THE COURT:  All right.
```

1              What time is a reasonable amount of time for the

2      Defendant to get his affairs in order to be available to self

3      surrender, Mr. Tanenbaum?

4              MR. TANENBAUM:  Thirty days, Your Honor.

5              THE COURT:  Do we have a report date?

6              THE CLERK:  Thirty days, June 17th.

7              THE COURT:  The Court would direct that the Defendant

8      self surrender on or before June 17, 2013 at the designated

9      place.  In the event no designation has been determined by

10     then, your lawyer will be notified, but subject to that, you

11     will be required to report at the designated facility on or

12     about and no later than June 17, 2013.  Any modification to the

13     request for incarceration, the location of incarceration, Mr.

14     Tanenbaum?

15             MR. TANENBAUM:  Your Honor, Mr. Cordero has decided

16     that it's perhaps wiser just if the Court could recommend a

17     camp.  I understand that the Bureau of Prisons is going to make

18     their own determinations as to his risk.

19             THE COURT:  The Court would recommend that the

20     Defendant be placed in a prison camp facility rather than

21     Coleman.  He has very exemplary behavior up until the date of

22     this offense, is not likely he needs any sort of maximum or

23     even medium security in this respect, and therefore would

24     recommend he's a fair candidate for that process.

25             The Court having pronounced sentence, does counsel

CLAUDIA SPANGLER-FRY  OFFICIAL U.S. COURT REPORTER

1    for the Government object to the sentence or the manner in

2    which it was imposed?

3             MS. PERESIE:  Your Honor, to preserve the issue, we

4    would object to the extent the sentence was below the

5    guidelines as -- after the departure the Government

6    recommended.

7             THE COURT:  Any objection from the defense?

8             MR. TANENBAUM:  No, Your Honor.  Thank you.

9             THE COURT:  All right.

10            The Defendant is hereby permitted to leave.  He is to

11   report as indicated, no later than June 17, 2013.

12            You entered a plea agreement, Mr. Cordero, and in

13   that plea agreement, you gave up most of your rights to appeal

14   the Court's sentence.  If any remaining rights exist and you

15   wish to exercise them, you must do so within 14 days of today's

16   date.  If you fail to do so, it will be a permanent waiver of

17   your right to appeal.  The Government, of course, is free to

18   file an appeal if it chooses, and if it does, you have the

19   right to have a lawyer represent you in the taking of or

20   defense of such an appeal.  If you cannot afford the filing

21   fee, you'll need to file a financial affidavit requesting

22   relief from the taking -- from the payment of a filing fee and

23   the Court will address it at that time.

24            Mr. Cordero, I cannot express strongly enough how

25   important it is that you continue to comply with all the terms

1   and conditions of your supervision and most importantly that

2   you self report as directed.  If you fail to self report as

3   directed, you will be arrested, you could be charged with

4   absconding, you could be charged with other offenses and you

5   could make your very difficult situation much worse if you can

6   imagine that.

7           Do you understand that?

8           THE DEFENDANT:  I do, Your Honor.

9           THE COURT:  There being nothing further, we are

10  dismissed.

11          (Thereupon, the proceedings concluded.)

12                      *******

13

14

15

16

17

18

19

20

21

22

23

24

25

CLAUDIA SPANGLER—FRY   OFFICIAL U.S. COURT REPORTER

```
 1                          CERTIFICATE

 2

 3    STATE OF FLORIDA          )
                                  SS
 4    COUNTY OF HILLSBOROUGH    )

 5

 6         I, CLAUDIA SPANGLER-FRY, Official Court Reporter for

 7    the United States District Court, Middle District, Tampa

 8    Division,

 9         DO HEREBY CERTIFY, that I was authorized to and

10    did, through use of Computer Aided Transcription, report

11    in shorthand the proceedings and evidence in the

12    above-styled cause, as stated in the caption hereto, and

13    that the foregoing pages numbered 1 to 41, inclusive,

14    constitute a true and correct transcription of my

15    shorthand report of said proceedings and evidence.

16         IN WITNESS WHEREOF I have hereunto set my hand

17    in the City of Tampa, County of Hillsborough, State of

18    Florida, this 2nd day of August, 2017.

19

20         _____
                 Claudia Spangler-Fry
21         CLAUDIA SPANGLER-FRY, Official Court Reporter

22

23

24

25
```

CLAUDIA SPANGLER-FRY   OFFICIAL U.S. COURT REPORTER