IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

vs.                                              Case No. 8:12-cr-00501-MSS-35AEP-1

JOSE MIGUEL CORDERO

_____/

### DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE

**COMES NOW** Defendant, Jose Cordero, *pro se*, to request that this honorable Court terminate or reduce[1] his supervised release term pursuant to 18 U.S.C. §3583(e)(1).

**Background**

1. On December 10, 2012, Mr. Cordero pled guilty to accessing with intent to view child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).

2. Prior to his sentencing, Mr. Cordero underwent a sex offender evaluation and risk assessment conducted by Dr. Suzonne M. Kline.

3. In her report, Dr. Kline concludes that there is no evidence of a Sexual Disorder (i.e., Paraphilia/Pedophilia). She also found no evidence of psychopathy or any indication of a specific interest in children. Dr. Kline noted that the recidivism rate for on-line offenders is low and that there is no research supporting the notion that viewing child pornography is a gateway to hands-on offending behavior (Doc 13 at 4-5). "As a

---

[1] 18 U.S.C. § 3583(e)(1) permits the district court to shorten the term of supervised release. United States v. Carpenter, 803 F.3d 1224 n.4 (11th Cir. 2015).

1

whole, the scientific literature studying sexual offender recidivism shows that, within the smaller number of sex offenders who go on to re-offend, the majority do so within the first three years post-release" (Doc. 13 at 13).

4.  On May 16, 2013, this Court sentenced Mr. Cordero to 12 months and one day imprisonment followed by 120 months of supervised release.

5.  In varying substantially downward from the sentencing guidelines, this Court noted that Mr. Cordero's case is "unusual" and "falls outside the heartland" of the average case (Doc. 21, 30-31). The Court states that Mr. Cordero is not a repeat offender because there is no evidence that the child pornography he accessed in 2006 was viewed by him at anytime up to his sentencing in 2013 (Doc. 21 at 31). "And to the extent that [a 10 year term of supervised release] is designed for treatment, the evidence here is [Mr. Cordero] is an unlikely candidate for any actual sexually deviant behavior" (Doc. 21 at 32).

6.  At sentencing, the Government stated that there is no evidence that Mr. Cordero engaged in any contact offenses, that Mr. Cordero admitted his wrong-doing, and is a changed man. The Government also did not believe that Mr. Cordero would continue to access child pornography (Doc. 21 at 23-24).

7.  Mr. Cordero was released from prison in May 2014.

8.  Mr. Cordero is the owner and lead technician of a business that installs high-end audio/video/automation equipment for commercial businesses and private residences.

9.  Mr. Cordero is married with two children; one of whom has Down Syndrome and requires special care. Mr. Cordero's employment is the only source of income for his

2

family.

10. Since his release from prison, Mr. Cordero has completed the active phase of two separate sex offender treatment programs.

11. At the time of this filing, Mr. Cordero has served 40 months of his supervised release term and has not violated any of his conditions.

**Legal Framework**

The court may, after considering the factors set forth in section 3553(a), terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice. 18 U.S.C. §3583(e)(1). The §3553(a) factors are: (1) - the nature and circumstances of the offense and the history and characteristics of the defendant, (2)(B) - to afford adequate deterrence to criminal conduct, (2)(C) - to protect the public from further crimes of the defendant, (2)(D) - to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, (4) - the kinds of sentence and the sentencing range established as set forth in the guidelines, (5) - any pertinent policy statement, (6) - the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (7) - the need to provide restitution to any victims of the offense. Federal Rules of Criminal Procedure Rule 32.1(c)(1) governs this proceeding and provides that the court must hold a hearing, at which the defendant has the right to

counsel, an opportunity to make a statement, and present any information in mitigation.

**Merits**

*Nature And Circumstances Of The Offense And
Mr. Cordero's History And Characteristics*

Mr. Cordero violated 18 U.S.C. § 2252(a)(4)(B) and (b)(2) by accessing with intent to view child pornography. He did not produce or distribute the child pornography he accessed. Mr. Cordero accepted responsibility for his actions and fully cooperated with federal authorities. Mr. Cordero has no criminal history and has served in the United States Army Reserves as a sergeant and counterintelligence agent for Joint Task Force Guantanamo in support of Operation ENDURING FREEDOM and the Global war on Terror. He served in Guantanamo for a year and received a Joint Service Commendation Medal for his outstanding foresight, attention-to-detail, and follow-up procedures while performing counter surveillance security for military commissions hearings.

During Mr. Cordero's exemplary service at Guantanamo, his wife was back home cheating on him; Mr. Cordero divorced her in 2006 as a result. The incident in 2006, the same year as the instant offense, proved quite stressful and psychologically debilitating for Mr. Cordero.

Mr. Cordero received an honorable discharge on April 21, 2008, at the rank of sergeant. The next day, he received his commission as a reserve warrant officer. He trained and served as a Blackhawk helicopter pilot in a medical evacuation company and was scheduled for deployment to Afghanistan when Mr. Cordero's offense from 2006 came to light. In 2011, Mr. Cordero's platoon leader gave him a glowing evaluation

about his "[e]xceptional performance." (PSR, ¶¶ 58-59)

According to the evaluation, Mr. Cordero's performance was "nothing short of outstanding" and "distinguished himself as one of the most valued officers in the platoon and in the company." The platoon leader noted that Mr. Cordero was "[e]asily in the top of his peer group" and "highly capable and fully autonomous in action." Moreover, Mr. Cordero was "very respected and valued amongst his peers for his dependability."

These characteristics continue to serve to Mr. Cordero's benefit. He has re-married, has two children, is gainfully employed, meets his financial obligations, and is well-respected in his community despite his conviction and status as a registered sex offender.

***Adequate Deterrence To Criminal Conduct***

The Supreme Court acknowledges that the stigma imposed for violating a sex crime statute is not trivial. Lawrence v. Texas, 539 U.S. 558, 575 (2003). "Beyond the offender's actual deprivation of liberty when incarcerated, a host of other penalties and burdens always attend criminal conviction, to name a few: losses of family life, of socio-economic status, of employment and career opportunities; diminution of certain civil rights and entitlements; and countless humiliations and indignities commonly associated with living in confinement." United States v. Mateo, 299 F.Supp.2d 201, 209-10 (S.D.N.Y 2004).

This Court has also observed, there can be little question that a conviction for a felony "tends to 'gravely besmirch' a person's reputation…convicted felons cannot vote, sit on a jury, serve in public office, possess a firearm, obtain certain professional

5

licenses, or obtain federal student loan assistance." Shelton v. Secretary, Dept. of Corrections, 802 F. Supp. 2d 1289, 1302 (M.D. Fla. 2011) (quoting Morissette v. U.S., 342 U.S. 246, 260 (1952)).

The label of "convicted felon," combined with a proclamation that Mr. Cordero is a sex offender, "creates irreparable damage to [his] reputation and standing in the community. This social stigma precludes, for example, [his] ability…to reside in any neighborhood of his choosing or to obtain certain employment." Shelton, 802 F. Supp. 2d at 1302; see also United States v. Cruikshank, 667 F. Supp. 697, 703 (S.D.W. Va. 2009) (noting "stigma" of defendant's child pornography conviction and limitations on where he could work and live).

To be sure, Mr. Cordero's criminal conviction has resulted in heavy loss. His financial resources to support his wife and two children have been greatly reduced and his employment opportunities are limited. Mr. Cordero bears the lifetime labels of felon and sex offender. The penalties and collateral consequences of Mr. Cordero's criminal conviction effectively achieve the purposes of deterring criminal conduct without the need for further supervision.

***The Need To Protect The Public***

Current empirical literature casts serious doubt on the existence of a substantial relationship between the consumption of child pornography and the likelihood of a contact sexual offense against a child. For example, one recent study that followed 231 child pornography offenders for six years after their initial offenses found that only nine persons, or 3.9 percent of the sample, committed even a non-contact sexual offense; only

6

two persons, or 0.8 percent of the sample, committed a contact offense. Jérôme Endrass et al., *The Consumption of Internet Child Pornography and Violent Sex Offending,* 9 BMC PSYCHIATRY 43 (2009), *available at* http://www.ncbi.nlm.nih.gov/pmc/articles/ PMC2716325/ pdf/1471-244X-9-43.pdf. Endrass et al. concluded that "the consumption of child pornography alone does not seem to represent a risk factor for committing hands-on sex offenses ... at least not in those subjects without prior convictions for hands on sex offenses." *Id. See also* Michael C. Seto & Angela W. Eke, *The Criminal Histories and Later Offending of Child Pornography Offenders,* 17 SEXUAL ABUSE 201, 208 (2005) ("[O]ur finding does contradict the assumption that all child pornography offenders are at very high risk to commit contact sexual offenses involving children.").

Other studies reinforce the conclusion that individuals who have only possessed and/or viewed child pornography present substantially lower risks of harm than do individuals who have committed contact sex offenses. *See, e.g.,* L. Webb, J. Craissati & S. Keen, *Characteristics of Internet Child Pornography Offenders: A Comparison with Child Molesters,* 19 SEXUAL ABUSE 449, 463 (2007) (finding Internet-only offenders "significantly less likely to fail in the community than child molesters," and concluding that "by far the largest subgroup of internet offenders would appear to pose a very low risk of sexual recidivism"), *available at* http://sax.sagepub.com/content/19/4/449.full.pdf + html; Seto & Eke, *supra,* at 207 & tbl.3 (finding that only 1.3 percent of Internet-only offenders in the sample recidivated with contact sex offenses, in contrast to 9.2 percent of persons with prior Internet and contact sex offenses). In fact, the Government stated that

7

there is no evidence that Mr. Cordero engaged in any contact offenses and that he is a changed man. The Government also did not believe that Mr. Cordero would continue to access child pornography (Doc. 21 at 23-24).

Finally, State sex offender registration laws subject Mr. Cordero to a lifetime of distance and residency restrictions, community and travel notifications, Internet identification, and loitering prohibitions designed to protect the public. *See* Florida Statutes §§ 943.0435, 775.215, and 856.022. Non-compliance of these laws is punishable by imprisonment which serves as an adequate deterrent to criminal conduct. *See* United States v. Autery, 555 F.3d 864, 875-76 (9th Cir. 2009) (finding that registration as a sex offender provides numerous practical restrictions designed to protect children").

For these reasons, it is not reasonably necessary for Mr. Cordero to remain on supervised release to ensure public safety.

*Mr. Cordero's Education And Correctional Treatment*

Mr. Cordero is a high school graduate, has some college education, and has served dutifully and honorably in the military. Since his release from prison, Mr. Cordero has maintained steady employment and continues to provide for his wife and two children as their sole source of income. He has no history of drug or alcohol abuse.

Aligned with this Court's statement that supervised release is designed for treatment, and that evidence demonstrates that he is an unlikely candidate for any actual sexually deviant behavior (Doc. 21 at 32), Mr. Cordero has faithfully participated in, and completed, the active phase of two sex offender treatment programs. These facts demonstrate that Mr. Cordero's supervision has accomplished its intended purpose.

8

### *Kinds of Sentence, Guidelines, and Policy Statements*

Mr. Cordero committed a sex offense under Chapter 110 of Title 18 of the United States Code. In 2003, Congress enacted the PROTECT Act which increased the statutory maximum for supervised release from three years to any number of years or life. *See* 18 U.S.C. §3583(k). When Congress enacted § 3583(k), it had in mind sex offenders who had committed contact offenses against children and were perceived to pose high risks of recidivism. *See* PROTECT Act of 2003, Pub.L. No. 108-21, § 101(3), 117 Stat. 650, 651-52; H.R. CONF. REP. NO. 108-66, at 49-50 (2003) Based on the understanding of this vast range, it stands to reason that the more culpable the offender, the greater the supervised release term and vice versa.

Mr. Cordero is guilty of accessing with intent to view child pornography. This Court determined the evidence supported that the commission of Mr. Cordero's crime occurred in 2006, but did not continue from that point to the time he was sentenced in 2013 (Doc. 21 at 31). This Court also noted that Mr. Cordero's case is "unusual" and "falls outside the heartland" of the average case (Doc. 21, 30-31). It stands to reason that Mr. Cordero is not the dangerous offender Congress had in mind when it began requiring lengthy supervised release terms in child pornography cases.

### *Restitution To Victims*

Mr. Cordero's criminal actions produced no identifiable victims to be compensated, and he has paid the $100 fine assessed by the sentencing court.

### *Mr. Cordero's Conduct*

Mr. Cordero has complied with the terms and conditions of his supervised release

9

without incident or violation. As previously mentioned, Mr. Cordero is gainfully employed, provides for his family, and has completed the active phase of two sex offender treatment programs. *See e.g.* United States v. Lorenzo, 471 F.3d 1219, 1221 (11th Cir. 2006) (finding that exceptional post-sentencing rehabilitative efforts may provide a basis for early termination of supervised release).

Courts have reached varying conclusions in the interpretation of the conduct prong of §3583(e)(1). For example, courts that have denied a defendant's motion for early termination of supervised release usually require something more than routine compliance. *See e.g.* United States v. Gutierrez, 925 F.Supp. 2d 1196, 1197 (finding that exemplary behavior and extraordinary progress is required); United States v. Medina, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) ("the supervisee has complied with the terms of his supervised release, but that ultimately is what is expected of him").

However, courts that have granted a defendant's motion for early termination of supervised release finds that compliance satisfies the conduct prong. *See e.g.* United States v. Hives, No. 1:06-00138-KD-C (S.D. Ala. 2011) (defendant's compliance to supervised release conditions is satisfactory conduct); United States v. Fowler, No. 2:05-cr-00251-LRH-GWF (D. Nev. 2011) (granting early termination of supervised release even though the defendant's history on supervised release has not been perfect); United States v. Seger, No. 14-1150 at 2 (1st Cir. 2014) (sex offender's compliance with supervised release conditions satisfy the conduct prong).

The general criteria used by U.S. Probation to determine a suitable candidate for early termination of supervised release are outlined in the Guide to Judiciary Policy, Vol.

10

8, Part E § 380.10(b). They are as follows:

1. Stable community reintegration (residence, family, employment)

2. Progressive strides toward supervision objectives and in compliance with all conditions of supervision.

3. No aggravated role in the offense of conviction.

4. No history of violence (sexually assaultive, predatory behavior or domestic violence).

5. No recent arrests or convictions or ongoing patterns of criminal conduct.

6. No recent evidence of drug or alcohol abuse.

7. No recent psychiatric episodes.

8. No identifiable risk to the safety of any identifiable victim.

9. No identifiable risk to public safety based on the risk prediction index.

In a brief summary, Mr. Cordero's residence, family, and employment are stable and he has complied with all conditions of supervision. His progressive strides toward supervision objectives include the completion of two sex offender treatment programs. Mr. Cordero has no aggravated role in his conviction, no history of violence, arrests, convictions, or ongoing patterns of criminal conduct. Mr. Cordero has no evidence of drug or alcohol abuse, no recent psychiatric episodes, and presents no identifiable risk to the safety of any identifiable victim. Finally, Mr. Cordero scores a '0' on U.S. Probation's Risk Prediction Index.

For these reasons, Mr. Cordero's conduct warrants early termination of his supervised release term. See United States v. Rentas, 573 F.Supp.2d 801, 802 (S.D.N.Y. 2008) (In granting the defendant early termination of supervised release, the court

11

reasoned that the defendant has steady employment, is married, completed treatment, complied with supervision, and has no run-ins with law enforcement. Therefore, "the defendant's exemplary law-abiding behavior demonstrates changed circumstances that warrant a reduction of the term of supervised release in accordance with 3553(a) and 3583(e).") (citing United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997)).

### *Interest Of Justice*

The interest of justice refers generally to the cause of fairness and equity used when a judge has discretion to making a ruling in a particular situation. In the context of supervised release, Congress has provided courts with a foundation for its purpose and intended goal. "Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." United States v. Johnson, 529 U.S. 53, 59 (2000); *see also* United States v. Pugh, 515 F.3d 1179, 1199 (11th Cir. 2008)  In its wisdom and understanding that the purpose and goal of supervised release can be achieved before its natural expiration, Congress provided the statutory means for courts to terminate a defendant's supervised release early.

Although Congress has expressed the importance of public safety when courts determine the sentence of convicted sex offenders, there still remains the required balancing test when weighing the considerations of public safety and supervised release; that is, the factors enumerated in §3553(a)(2) are to be "sufficient, but not greater than necessary" for the need of the sentence imposed. Within this proper framework, the facts and reasoning in this motion serve to warrant terminating or reducing Mr. Cordero's

12

supervised release in the interest of justice.

**Persuasive Authority**

As a guidepost to his request for early termination of supervised release, Mr. Cordero provides this honorable Court with district court cases in which sex offenders were granted early termination of supervised release (Exhibit 1).

## **CONCLUSION**

**WHEREFORE**, Mr. Cordero prays that this honorable Court grant his motion to terminate his supervised release, or reduce his supervised release term to five years.

DATED this 13th day of September, 2017.

Respectfully Submitted,

Jose Cordero, *pro se*
4414 West Price Avenue
Tampa, FL 33611
(813)205-4565

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the Clerk of Court this 13th day of September, 2017 via mail to:

United States Federal Courthouse
801 North Florida Avenue
Tampa, Florida 33602

And a copy furnished by mail to:

Jennifer Lynn Peresie, Assistant U.S. Attorney
400 N. Tampa Street
Suite 3200
Tampa, FL 33602
(813)274-6000