FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

vs.　　　　　　　　　　　　　　　　　Case No. 8:12-cr-00501-MSS-35AEP-1

JOSE MIGUEL CORDERO

_____/

## DEFENDANT'S MOTION TO MODIFY CONDITIONS
## OF HIS SUPERVISED RELEASE

**COMES NOW** Defendant, Jose Cordero, *pro se*, to request that this honorable Court modify the conditions of his supervised release pursuant to 18 U.S.C. §3583(e)(2) to permit him access to the Internet without obtaining prior approval from his probation officer.

**Background**

1.　On December 10, 2012, Mr. Cordero pled guilty to accessing with intent to view child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).

2.　On May 16, 2013, this Court sentenced Mr. Cordero to 12 months and one day imprisonment followed by 120 months of supervised release.

3.　As an additional condition of his supervised release, Mr. Cordero shall not possess or use a computer with access to any on-line service at any location (including employment) without written approval from the probation officer. This includes access through any Internet service

1

provider, bulletin board system, or any public or private computer network system[1]. The defendant shall permit routine inspection of your computer system, hard drive, and other medial storage materials to confirm adherence to this condition. This inspection shall be no more intrusive than is necessary to ensure compliance with this condition. The defendant shall inform your employer or other third-party who may be impacted by the condition, of this computer-related restriction and the computer inspection provisions of the condition (Doc. 17 at 4). (hereinafter referred to as Additional Condition 6).

4.  Mr. Cordero was released from prison in May 2014, and began serving his 120-month supervised release term.

5.  Mr. Cordero is the owner and lead technician of a business that installs high-end audio/video/automation equipment for commercial businesses and private residences.

6.  Mr. Cordero is married with two children; one of whom has Down Syndrome and requires special care. Mr. Cordero's employment is the only source of income for his family.

7.  Approximately three months after Mr. Cordero's release, he received verbal permission from U.S. Probation Officer Carlos Cologne to use the Internet for work-related purposes on a case-by-case basis. Mr. Cordero was also permitted to have devices in his home which accessed the Internet for his wife and children's use.

8.  One month later, U.S. Probation approached Mr. Cordero with a waiver requesting his consent to modify his supervised release conditions; specifically, by adding the requirements that

---

[1] Mr. Cordero's Motion for Modification only challenges the directives contained in the first two sentences of Additional Condition 6.

Mr. Cordero submit to polygraph examinations and attend sex offender specific treatment[2]. Ultimately, Mr. Cordero refused to acquiesce to Probation's request.

9.  In May 2015, Mr. Cordero's supervision was transferred from Officer Carlos Colon to Officer Brian Gabriesheski.

10.  Approximately one month later, Officer Gabriesheski, along with his supervisor, met with Mr. Cordero to inform him that he would no longer be permitted to use the Internet for work-related purposes, and that the Internet connection to Mr. Cordero's home be terminated. With exception to his wife's cellular phone, the officers also instructed Mr. Cordero to remove all devices from his home that could access the Internet.

11.  Although Mr. Cordero had not demonstrated any abuse of the Internet privilege granted by his first probation officer, Officer Gabriesheski explained that "just because we have doing it one way, doesn't mean we can't change it".

12.  At this meeting, Officer Gabriesheski implied that U.S. Probation may be able to re-instate Mr. Cordero's prior Internet privileges if he would agree to submitting to polygraph examinations as a condition of his supervised release. Mr. Cordero stated that he was being coerced, and Officer Gabriesheski ended the meeting .

13.  U.S. Probation's directives reduced Mr. Cordero's annual income approximately $15,000 as he was forced to contract labor to perform the network programming tasks that required Internet use. Mr. Cordero lost the ability to solicit business via the World Wide Web,

---

[2] This Court does not require Mr. Cordero's participation in a *sex offender* treatment program as a condition of his release (Doc 17 at 4). However, U.S. Probation has placed Mr. Cordero in sex offender specific treatment. Mr. Cordero has completed the active phase of two sex offender treatment programs; one sponsored by ITM (Intensive Treatment Modalities) and the other sponsored by PMG (Psychological Management Group). Even so, U.S. Probation will not release Mr. Cordero from sex offender treatment until the expiration of his supervised release term which is 10 years.

communicate with his customers via email, generate electronic invoices, and transmit credit card payments. Furthermore, the learning videos vital to Mr. Cordero's special needs son could only be accessed through his wife's cellular phone which incurred an additional data usage expense.

14. Approximately one year later, Mr. Cordero requested permission to re-establish the Internet connection to his home. The following month, U.S. Probation approved the request so that Mr. Cordero's wife could use her cell phone to access the Internet.

15. On June 13, 2017, Mr. Cordero met with his probation officer Alerson Jaquez to discuss Mr. Cordero's presence in private residences while engaged in his occupational duties as a technician.

16. Officer Jaquez expressed a concern that Mr. Cordero could come into contact with minors who may reside in the homes where Mr. Cordero is performing his occupational duties.

17. Officer Jaquez also expressed a concern for Mr. Cordero's welfare in the event a client discovered that Mr. Cordero was a convicted sex offender.

18. Mr. Cordero explained to Officer Jaquez that neither of his proffered scenarios has ever occurred during the course of his employment.

19. Officer Jaquez stated that U.S. Probation would be informing the district court of its concerns that Mr. Cordero may come in contact with a minor while working. Officer Jaquez also stated that U.S. Probation would be requesting that the district court modify Mr. Cordero's supervised release conditions to require him to submit to polygraph examinations as a means to monitor his compliance with the restriction that prohibits direct contact with minors.

20. On July 7, 2017, this Court entered a *sealed* Order modifying Mr. Cordero's conditions of supervised release (Doc. 18). The Court ordered the defendant (1) to disclose details about the

work he performs at private residences; and (2) to notify prospective clients of his sex offender status. As a result of its Order, this Court acknowledges that Mr. Cordero stands to suffer potential business loss (Doc. 18 at 2).

**Legal Framework**

The court may, after considering the factors set forth in section 3553(a), modify the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision. 18 U.S.C. §3583(e)(2). The relevant § 3553(a) factors include the nature and circumstances of the offense, the defendant's history and characteristics, deterrence, public protection, training and education, the applicable sentencing guideline range for the offense, and the need to avoid unwarranted sentencing disparities. *See* § 3553(a)(1), (a)(2)(B)-(D), and (a)(4)-(7). The Federal Sentencing Guidelines permit the district court to set any conditions of supervised release that are "reasonably related" to the factors enumerated in § 3553(a) "so long as the conditions 'involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth [in § 3553(a)] and are consistent with any pertinent policy statements issued by the Sentencing Commission." United States v. Zinn, 321 F.3d 1084, 1089 (11th Cir. 2003)(citing U.S.S.G. § 5D1.3(b)). Because U.S.S.G. § 5D1.3(b) mirrors § 3583(d)(1)-(3), the Eleventh Circuit considers that guideline provision together with the statute when reviewing a special condition of supervised release. *See* United States v. Okoko, 365 F.3d 962, 965 n.5 (11th Cir. 2004)(noting that this Court considers § 5D1.3(b) in conjunction with § 3583(d) when reviewing a special condition of supervised release); *see also* United States v.

5

Collins, 684 F.3d 873, 892 (9th Cir. 2012) (supervised release conditions are considered unreasonable if they are not reasonably related to the goals of deterrence, protection of the public, or rehabilitation of the offender, or if the condition infringes more on the offender's liberty than is "reasonably necessary" to accomplish these statutory goals).

The plain language of 18 U.S.C. § 3583(e)(2) does not require Mr. Cordero to establish a showing of a change in his circumstances[3] before the court can modify his supervised release conditions. *See* United States v. Bainbridge, 746 F.3d 943, 953 (9th Cir. 2014)(rejecting the argument that a change in defendant's circumstances is required before the district court can modify supervised release conditions); United States v. Murray, 692 F.3d 273, 279 (3d Cir. 2012)(a showing of new or unforeseen circumstances is not a necessary pre-requisite to justify modification); United States v. Begay, 631 F.3d 1168 (10th Cir. 2011)(where § 3583(e)(2) does not require a district court to make a finding of changed circumstances prior to modifying the terms of supervised release). Additionally, circuit courts have strongly encouraged district courts to remove restrictive conditions for defendants based not on a change in circumstances, but simply over the due course of time. *See* United States v. Quinn, 698 F.3d 651, 652 (7th Cir. 2012).

Finally, a defendant may present legal arguments to originally imposed supervised release conditions pursuant to 18 U.S.C. § 3583(e)(2). *See* United States v. Neal, 810 F.3d 512, 518 (7th Cir. 2016) (concluding that § 3583(e)(2) is interpreted to allow a defendant to bring challenges to the legality of conditions of supervised release).

Federal Rules of Criminal Procedure 32.1(c)(1) governs this proceeding and provides that

---

[3] This Court's July 7, 2017 Order does not identify a change in Mr. Cordero's circumstances which necessitated the modification of his supervised release conditions to add occupational restrictions.

the court must hold a hearing, at which the defendant has the right to counsel, an opportunity to make a statement, and present any information in mitigation.

I.   **Additional Condition 6 Involves A Greater Deprivation Of Liberty Than Is Reasonably Necessary For The Purposes Set Forth In 18 U.S.C. § 3553(a)**

   A.   **Mr. Cordero's Business Needs**

Mr. Cordero is the owner and lead technician of a business that installs high-end audio/video and electrical automation equipment for commercial businesses and private residences. As part of the installation process, a technician must access the Internet to download software updates and drivers to the equipment for proper setup and operation. The technician accomplishes this task with use of a tablet or laptop computer. In the initial stages of the contracted services, it is vital that the technician provide the client with an electronic blueprint that plots cable runs and equipment location. Equally as important in this highly competitive industry is the need to advertise and remain in contact with the client regarding quotes, invoices, payments, and service concerns; all of which are performed most efficiently and effectively through the use of e-mail and the Internet. In fact, Mr. Cordero has lost contracts because of delinquent quotes and his inability to process credit cards for clients.

   B.   **Mr. Cordero's Family Needs**

Currently the only device with access to the Internet in Mr. Cordero's home is his wife's cell phone. Because Probation does not permit any other devices in Mr. Cordero's home that can access the Internet, Mr. Cordero's children are unable to access a large number of available on-line learning resources. Mr. Cordero's son's school has noted his son's significantly positive response to the on-line learning tools. Mr. Cordero's daughter is also negatively impacted by not being able to freely access on-line educational resources as she has begun to fall behind in her

speech and cognitive skills. Mr. Cordero's wife, who stays at home due to the large number of doctor appointments and therapy treatments for their children, would greatly benefit from having a computer with Internet access. This would afford her the capability to work from home, reduce the financial stress on the household, and simplify the process of paying debts and monthly household expenses. For Mr. Cordero, personal Internet use permits him greater flexibility to complete home projects and assist his wife in their family's financial affairs.

### C. Mr. Cordero's Risk of Re-offense And Public Protection

In varying substantially downward from the sentencing guidelines, this Court noted that Mr. Cordero's case is "unusual" and "falls outside the heartland" of the average case (Doc. 21, 30-31). The Court states that Mr. Cordero is not a repeat offender because there is no evidence that the child pornography he accessed in 2006 was viewed by him at anytime up to his sentencing in 2013 (Doc. 21 at 31). Dr. Suzonne Kline's evaluation and risk assessment of Mr. Cordero found no evidence of psychopathy or specific sexual interest in children, and concluded that Mr. Cordero's risk of reoffending to be considered the lowest of offenders (Doc. 13 at 4). Dr. Kline added that there is no research supporting the notion that viewing child pornography is a gateway to hands-on offending behavior (Doc. 13, at 4-5).

Since his release over three years ago, Mr. Cordero has not repeated his criminal behavior or violated any of the terms and conditions of his supervised release. "As a whole, the scientific literature studying sexual offender recidivism shows that, within the smaller number of sex offenders who go on to re-offend, the majority do so within the first three years post-release" (Doc. 13 at 13). Simply put, Mr. Cordero has not engaged in any criminal behavior in 11 years, and has completed the active phase of two sex-offender treatment programs.

Mr. Cordero does not challenge the reach of Additional Condition 6 that provides the probation officer the authority to inspect and search his home and work computers to monitor his compliance and Internet activity. Finally, Florida law also requires that a sexual offender shall register all electronic mail addresses and Internet identifiers with the department through the department's online system or in person at the sheriff's office before using such electronic mail addresses and Internet identifiers. Fla. Stat. §943.0435(4)(e)(1). These measures reasonably deter Mr. Cordero from using the Internet is a prohibited manner and serve to adequately protect the public.

### D. Mr. Cordero's Hardship

Beyond Mr. Cordero's sentence and supervised release restrictions, his felony conviction and sex offender label will forever impair his functionality as a father, member of the community, and participation in the workforce. This Court has observed that there can be little question that a conviction for a felony "tends to 'gravely besmirch' a person's reputation. As the Supreme Court noted, a felony is 'as bad a word as you can give to a man or thing.' Convicted felons cannot vote, sit on a jury, serve in public office, possess a firearm, obtain certain professional licenses, or obtain federal student loan assistance." Shelton v. Secretary, Dept. of Corrections, 802 F. Supp. 2d 1289, 1302 (M.D.Fla. 2011) (quoting Morissette v. U.S., 342 U.S. 246, 260 (1952)).

The label of "convicted felon," combined with a proclamation that Mr. Cordero is a sex offender, "creates irreparable damage to [his] reputation and standing in the community. This social stigma precludes, for example, [his] ability...to reside in any neighborhood of his choosing or to obtain certain employment." Shelton, 802 F. Supp. 2d at 1302; *see also* United

9

States v. Cruikshank, 667 F. Supp. 697, 703 (S.D.W. Va. 2009) (noting "stigma" of defendant's child pornography conviction and limitations on where he could work and live).

In addition to these difficulties, Mr. Cordero is prohibited from using the Internet as a tool that would provide substantial financial and personal benefit for Mr. Cordero and his family. If this were not enough, the Court has now imposed on Mr. Cordero the requirement that he notify prospective clients of his sex offender status which will assuredly result in further business loss. This not only threatens Mr. Cordero's livelihood and his ability to support his wife and two small children, but also his freedom because the Court requires that Mr. Cordero support his dependants, meet other family responsibilities, and work regularly at a lawful occupation as conditions of his supervised release (Doc. 17 at 3).

While this Court enjoys broad discretion in fashioning supervised release conditions, the facts and circumstances of Mr. Cordero's case demonstrate that Additional Condition 6 involves a greater deprivation of Mr. Cordero's liberty to freely access the Internet than is reasonably necessary for the purposes set forth in 18 U.S.C. § 3553(a). Therefore, this Court should modify Additional Condition 6 to permit Mr. Corderoto use electronic devices and access the Internet without having to obtain permission from his probation officer.

## II. Additional Condition 6 Violates Mr. Cordero's First Amendment Rights

Mr. Cordero respectfully argues that the recent unanimous Supreme Court holding in Packingham v. North Carolina, No. 15-1194 (decided June 19, 2017), supports his request for modification because restricting his access to the Internet violates his protected free speech rights under the First Amendment.

The United States Supreme Court has recently held that a State law prohibiting sex

10

offenders from accessing commercial social networking Web sites where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages impermissibly restrict lawful speech in violation of the First Amendment. Packingham at 1. The Court stated that even convicted criminals might receive legitimate benefits from these means for access to the world of ideas, particularly if they seek to reform and to pursue lawful and rewarding lives. Id. at 2. Prior to Packingham, circuit courts have also vacated conditions restricting the defendant from accessing the Internet as overly broad and one that imposes a greater deprivation of a defendant's First Amendment rights than is reasonably necessary. *See* United States v. Crume, 422 F. 3d 728, 733 (8th Cir. 2005); United States v. Voelker, 489 F.3d 139, 145 (3d. Cir. 2007) (finding that the extraordinary breadth of this condition is the antithesis of a narrowly tailored sanction); United States v. Holm, 326 F.3d 872, 877 (7th Cir. 2003) (finding that the restriction sweeps more broadly and imposes a greater deprivation on the defendant's liberty than is necessary, and thus fails to satisfy the narrow tailoring requirement of § 3583(d)(2)); United States v. White, 244 F.3d 1199, 1206 (10th Cir. 2001) (where the court cautioned against a computer Internet prohibition as too broad, and suggested the use of filtering software as a solution to a possible violation of the defendant's free speech); United States v. Sealed Juvenile, 781 F. 3d 747, 756-57 (5th Cir. 2015) (admonishing the lower court that the condition was not to be construed or enforced in such a manner that the defendant would be required to seek prior written approval every single time he must use a computer or access the Internet).

In Mr. Cordero's case, Additional Condition 6 restricts his reach to the Web sites that the Supreme Court has held that sex offenders are afforded First Amendment protections of free

speech. Therefore, the <u>Packingham</u> holding supports Mr. Cordero's modification request to remove the Internet access restrictions contained in Additional Condition 6.

## CONCLUSION

**WHEREFORE**, Mr. Cordero requests that this Court grant his Motion for Modification, and remove from Additional Condition 6 the requirements that he shall not possess or use a computer with access to any on-line service at any location (including employment) without written approval from the probation officer which includes access through any Internet service provider, bulletin board system, or any public or private computer network system.

DATED this 13th day of September, 2017.

Respectfully Submitted,

Jose Cordero, pro se
4414 West Price Avenue
Tampa, FL 33611
(813)205-4565

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the Clerk of Court this 13th day of September, 2017 via mail to:

United States Federal Courthouse
801 North Florida Avenue
Tampa, Florida 33602

And a copy furnished by mail to:

Jennifer Lynn Peresie, Assistant U.S. Attorney
400 N. Tampa Street
Suite 3200
Tampa, FL 33602
(813) 274-6000