```
1                    UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
2                          TAMPA DIVISION

3     UNITED STATES OF AMERICA,

4                         Plaintiff,

5          vs.                   CASE NO. 8:12-cr-501-T-35AEP
                                 December 10, 2012
6                                Tampa, Florida
                                 2:10 - 2:51 p.m.
7
      JOSE MIGUEL CORDERO,
8
                          Defendant.
9     _____/

10

              TRANSCRIPT OF INITIAL/BOND/PLEA HEARING
11          BEFORE THE HONORABLE ANTHONY E. PORCELLI
                 UNITED STATES MAGISTRATE JUDGE
12
      APPEARANCES:
13
      For the Government:      STACIE HARRIS, ESQ.
14                             Assistant U.S. Attorney
                               400 N. Tampa Street, Suite 3200
15                             Tampa, Florida 33602
                               813/274-6000
16
      For the Defendant:       ADAM SCOTT TANENBAUM, ESQ.
17                             Florida House of Representatives
                               Office of the General Counsel
18                             418 The Capitol
                               Tallahassee, Florida 32399
19                             850/717-5587

20    Court Reporter:          Howard W. Jones, RPR, FCRR
                               801 N. Florida Avenue, Suite 15A
21                             Tampa, Florida 33602
                               813/301-5024
22

23

24    Proceedings transcribed via courtroom digital audio
      recording by transcriptionist using computer-aided
25    transcription.
```

# P R O C E E D I N G S

1
2          (Court called to order.)

3          THE COURT:  All right.  Let's call the case for

4 the record.

5          THE DEPUTY CLERK:  The United States vs. Jose

6 Miguel Cordero, Case No. 8:12-cr-501-T-35AEP.

7          THE COURT:  All right.  Ms. Harris on behalf of

8 the United States.  Good afternoon.

9          MS. HARRIS:  Good afternoon, Your Honor.

10          THE COURT:  Mr. Tanenbaum, good afternoon.

11          MR. TANENBAUM:  Good afternoon, Your Honor.

12          THE COURT:  All right.  And good afternoon,

13 Mr. Cordero.

14          THE DEFENDANT:  Good afternoon, Your Honor.

15          THE COURT:  Mr. Cordero, it's my understanding,

16 sir, that you want to enter a plea of guilt pursuant to a

17 written plea agreement.  Is that correct, sir?

18          THE DEFENDANT:  That is correct, Your Honor.

19          THE COURT:  It's also my understanding that this

20 is your first time appearing in court.  Is that correct?

21          THE DEFENDANT:  That is correct, Your Honor.

22          THE COURT:  All right.  Let me -- before we get to

23 the plea hearing, let me explain to you your rights in

24 connection with the charge that's been filed against you.

25          What's been filed against you is a one-count

1    information alleging the intent to view at least one matter

2    which contained visual depictions of child pornography.  In

3    summary, it alleges from an unknown date, no later than on

4    or about July 13, 2006, and continuing through on or about

5    October 3rd of 2010 in the Middle District of Florida and

6    elsewhere you did knowingly access with the intent to view

7    at least one matter, the production of which involved and

8    which did contain an original depiction of a minor engaged

9    in sexually explicit conduct that had been shipped,

10   transported in interstate or foreign commerce by a computer

11   and was produced using materials which had been shipped and

12   transported in interstate or foreign commerce, that is by

13   any means, including a computer.

14            This is alleged to be in violation of Title 18,

15   United States Code, Section 2252(a)(4)(B) and (b)(2).

16            In connection with this charge, you have a number

17   of rights:

18            First, you have the right to be represented by a

19   lawyer at all stages in your case.  If you cannot afford to

20   hire a lawyer, the Court will appoint one to you at no cost

21   to you.

22            Now, Mr. Tanenbaum has been appointed to represent

23   you based upon --

24            I'm assuming, Mr. Tanenbaum, is there a target

25   letter in this matter?

4

```
1              MR. TANENBAUM:  That's correct, Your Honor.

2              THE COURT:  All right.  Do you want to continue

3    with Mr. Tanenbaum representing you in this matter, sir?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  All right.  Let me also explain to you

6    that in no way are you required to make any statements in

7    connection with this charge that's been filed against you.

8    If you've started any statements with anyone, to

9    specifically include law enforcement, you do not have to

10   continue those conversations and you can stop them at any

11   time.

12             It's very important you understand that outside

13   any conversations you have with your attorney about this

14   charge, any statements to anyone else that you make about

15   the charge, those statements could and will likely be used

16   against you in this prosecution.

17             Do you understand that, sir?

18             THE DEFENDANT:  I do, Your Honor.

19             THE COURT:  Lastly, Mr. Cordero, you have a right

20   to have the matter of bond be taken up by the Court and I'm

21   prepared to consider that matter today.

22             Let me ask the government what your position is in

23   the matter of bond.

24             MS. HARRIS:  Your Honor, the government believes

25   that there are reasonable conditions that will assure the
```

1    appearance of this defendant in future court hearings.

2            THE COURT:  All right.  Any suggested conditions?

3            MS. HARRIS:  Your Honor, we would ask that all the

4    Adam Walsh conditions apply except for the electronic

5    monitoring.  It's my understanding, based on the nature of

6    these charges, that electronic monitoring is not required in

7    this case, but we would ask that the other conditions be

8    imposed, as well as a 10,000-dollar signature bond.

9            THE COURT:  All right.  Just to be clear for the

10   record, which conditions do you want imposed?

11           MS. HARRIS:  Specifically, that he report on a

12   regular basis to Pretrial Services, he comply with a

13   specified curfew, refrain from possessing a firearm, and

14   that's it.

15           THE COURT:  All right.  You want a signature bond?

16           MS. HARRIS:  Yes, Your Honor, a 10,000-dollar

17   signature bond as well.

18           THE COURT:  All right.  Any other conditions you

19   want the Court to consider?

20           MS. HARRIS:  And the only other condition would be

21   a third-party custodian, which is I believe his wife.

22           THE COURT:  All right.  Mr. Tanenbaum?

23           MR. TANENBAUM:  I don't think there's any problem

24   with that.  I -- may I have just a minute?

25           THE COURT:  Take your time.

1        (Pause in proceedings.)

2        MR. TANENBAUM:  Your Honor, all the conditions

3   that have been listed I don't think there will be a problem

4   with except for the third-party custodian.  More just

5   logistically, Mr. Cordero's wife is the parent of --

6   together the two of them are a parent of a special needs

7   child and having her come in to come and sign the paperwork

8   and that -- I just point that out.  If the Court feels it's

9   necessary, if that's the thing that's going to keep

10  Mr. Cordero from being released pending sentencing,

11  obviously, we'll do what we can.  But if there's any way to

12  assure the Court of Mr. Cordero's continued compliance and

13  everything without a third-party custodian, we would ask

14  that that condition be omitted.

15        THE COURT:  Where is he going to -- what's the

16  address he's going to reside at?

17        MR. TANENBAUM:  The address that's listed in the

18  bail report.  The two of them reside there together with

19  his -- with their child.  It's in Seminole.

20        THE COURT:  All right.  Ms. Harris, is there any

21  specific reason to have her come in if it could be resolved

22  a certain way?  There's not much more just by signing the

23  third-party custodian paperwork, she's going to be in the

24  household.

25        MS. HARRIS:  Right.  No, there's no --

```
 1              THE COURT:  And is there any concern regarding the
 2   children in the household?
 3              MS. HARRIS:  It's my understanding it's one child,
 4   an 18-month-old.  You know, most of the child pornography
 5   that this defendant accessed dealt with older individuals,
 6   so there's no concern from the government's standpoint.
 7              The only thing that I would suggest that I did not
 8   say before would be no internet usage that I didn't state
 9   earlier.
10              THE COURT:  All right.  Anything about that,
11   Mr. Tanenbaum, that concerns you?
12              MR. TANENBAUM:  No, Your Honor.
13              THE COURT:  Okay.  Thank you.
14              All right.  Having considered the factors under
15   Title 18, United States Code, Section 3142, having heard the
16   agreement by the government, as well as Mr. Tanenbaum's
17   response, although this is a subject where there is a
18   presumption the defendant can be a risk of flight or danger
19   to the community, I do find upon my own independent review,
20   the Pretrial Services report, as well as the presentation by
21   the parties there are conditions of release the Court can
22   impose that would satisfy any concerns of risk of flight or
23   danger to the community.
24              Therefore, Mr. Cordero, I'm going to issue an
25   order allowing you to be released on certain conditions.
```

1  I'm going to explain to you each of these conditions and

2  it's important you understand each and every condition,

3  because if you violate the Court's order in any way, it's

4  likely the Court's going to issue a warrant for your arrest

5  and you will be detained pending the final outcome of your

6  case.  Additionally, you could be charged with another

7  crime, such as obstruction of justice, which would be

8  punishable beyond any penalties that you are facing in this

9  case.

10         Do you understand that, sir?

11         THE DEFENDANT:  I understand that, Your Honor.

12         THE COURT:  All right.  Let me explain to you,

13  then, the standard conditions first.  The standard

14  conditions are:

15         First, that you must appear before the Court in

16  accordance with all court notices.  If you fail to appear as

17  required, again, the Court's likely going to issue a warrant

18  for your arrest, but you could also be charged with the

19  crime of failing to appear, which is then punishable beyond

20  any penalties you are facing in this case.

21         You cannot for any reason leave the Middle

22  District of Florida without prior Court approval.  The

23  counties within the Middle District of Florida will be in

24  your bond paperwork.  If you have any questions about that,

25  you can discuss that with Mr. Tanenbaum.

1          I'm going to direct that you reside at the

2    residence as listed in the Pretrial Services report with

3    your wife and you cannot change that residence without prior

4    Court approval.

5          I have to inform you you cannot commit any

6    federal, state, or local crime during the period of your

7    release and if you're otherwise charged with another crime

8    during the period of your release, you must immediately

9    inform the Pretrial Services agency of that charge.

10          Additionally, federal law prohibits any conduct

11    relating to the intimidation of victims, witnesses, or

12    informants or any conduct relating to the intimidation of

13    officers of the court or any potential jurors.  That conduct

14    is chargeable by a separate federal felony and punishable

15    beyond any penalties that you're facing in this case.

16          Do you understand that?

17          THE DEFENDANT:  I do, Your Honor.

18          THE COURT:  All right.  I'll explain to you the

19    special conditions of release I'm going to impose:

20          First, you are to report to Pretrial Services as

21    directed by that agency.

22          You are to sign a signature bond in the amount of

23    $10,000.  That bond does not need to be secured by property

24    at this time, but you need to understand that if you violate

25    the Court's bond in any way, the government could seek to

1   forfeit any property you have up to the amount of $10,000.

2            Do you understand that?

3            THE DEFENDANT:  I understand, Your Honor.

4            THE COURT:  I'm going to impose all the Adam Walsh

5   factors for consideration upon release except for the

6   electronic monitoring, to include I'm going to direct that

7   you have a curfew from 8:00 in the morning to 8:00 in the

8   evening each day, which means you must be in your

9   residence --

10           What time do you go to work, sir?

11           THE DEFENDANT:  I usually leave about 7:30 in the

12  morning.

13           THE COURT:  7:30 in the morning?

14           THE DEFENDANT:  And then I've been working on

15  commercial property, so I've been returning home anywhere

16  from 7:00 to nine o'clock at night.

17           THE COURT:  Well, what I'm going to do, then, is

18  just make it from 7:00 to 8:00.  So you need to make sure

19  you don't leave the house before 7:00 and you're back in the

20  house at 8:00.

21           Do you understand that, sir?

22           THE DEFENDANT:  I understand, Your Honor.

23           THE COURT:  All right.  Also, I'm going to direct

24  that you have no firearms.

25           Are there any firearms in the house, sir?

1          THE DEFENDANT:  We have -- one thing that we were

2    talking about, I have an old antique rifle that's stored in

3    a safe that I do not have a combination to.  I've sent away

4    to the manufacturer, the company, to provide that

5    information to me.  Once that finally comes back, they told

6    me about a month to a month and a half, I will then have my

7    wife remove it from the residence.

8          We're also looking into just simply trying to get

9    the safe removed from the house, but it's a full standup

10   wall safe that weighs close to six to 800 pounds.  So I'm

11   trying to figure out the logistics of that right now.

12         THE COURT:  All right.  I'm going to give you

13   30 days to remove the firearm from the house.

14         THE DEFENDANT:  Understood, Your Honor.

15         THE COURT:  All right.  Outside that firearm,

16   there should be no other firearms in the house.

17         THE DEFENDANT:  No, Your Honor.

18         THE COURT:  But if the firearm's in the safe and

19   the safe is not accessible, I'll give you 30 days to

20   accomplish the removal of that firearm.

21         THE DEFENDANT:  Understood, Your Honor.

22         THE COURT:  All right.  I will also direct that

23   you have no internet usage during the period of release.

24   That means that you cannot access the internet in any way.

25         Do you need access to the internet for work, sir?

1          THE DEFENDANT:  I need it for email purposes.  Is

2     that sufficient or --

3          THE COURT:  Well, email is different from the

4     internet, so --

5          THE DEFENDANT:  Okay.

6          THE COURT:  -- if you want to do internet

7     searches, you cannot do that, but if you have email access,

8     that's sufficient.

9          THE DEFENDANT:  Okay.

10         THE COURT:  Let me ask Pretrial Services, is there

11    a concern about that?

12         PROBATION OFFICER:  Your Honor, usually when that

13    condition is imposed, they can't have it on their phone,

14    internet access, so I don't see how he can have access to

15    email without having internet access.

16         THE COURT:  Mr. Tanenbaum?

17         MR. TANENBAUM:  I was just trying to -- my

18    understanding of the internet, I was just trying to figure

19    out how that -- I mean, the Court can impose whatever

20    restriction it deems appropriate.  He accesses his email

21    through his phone, just as Pretrial Services indicated.  I

22    guess that's part of a data plan and --

23         THE DEFENDANT:  It's a data plan.

24         MR. TANENBAUM:  I don't know, I imagine there's a

25    way perhaps -- well, I defer to the Court.

```
 1                 THE COURT:  Ms. Harris, any suggestions regarding
 2      that?
 3                 MS. HARRIS:  Your Honor, we ask for no internet.
 4      I mean, just --
 5                 THE COURT:  All right.  Mr. Tanenbaum, I'm
 6      inclined to restrict the internet.  If that means it denies
 7      him email access, unless you have some suggestion on how it
 8      may be accomplished, but I'm going to need the restriction
 9      as far as no internet access and if he can accomplish that
10      without the phone and having access just to strictly emails,
11      that's fine.  But I'm trying to avoid any email -- or
12      internet searches, so if there's an alternative suggestion
13      you want the Court to consider, you can file a motion at a
14      later date or if you have one now you want me to consider.
15                 MR. TANENBAUM:  Well, just before I propose it to
16      him as an alternative, I wanted to see if it was going to be
17      okay with the Court.  If someone else could access -- it's a
18      Gmail account apparently.  If someone else could access his
19      Gmail account and print out whatever emails he needs and
20      read them in hard copy, will that --
21                 THE COURT:  That's more than -- yeah, that's no
22      problem.
23                 MR. TANENBAUM:  Okay.  Thank you, Your Honor.
24                 THE COURT:  All right.  So no internet access.
25                 All right.  Ms. Harris, having stated all those
```

1    conditions, do you have any other suggested conditions?

2            MS. HARRIS:  No, Your Honor.

3            THE COURT:  All right.  Let me ask Pretrial, any

4    issues regarding those conditions?

5            PROBATION OFFICER:  Judge, U.S. passport.

6            THE COURT:  All right.  Thank you.

7            I'm going to direct that you surrender your

8    passport as well to Pretrial Services and they will maintain

9    custody of the passport to the conclusion of the case.

10           Do you understand that, sir?

11           THE DEFENDANT:  I understand, Your Honor.

12           THE COURT:  All right.  We'll have the bond

13   paperwork drawn up for you at the end of the hearing, but

14   I'm also going to direct at the end of the hearing that you

15   report to Pretrial Service -- or, excuse me, to the

16   Marshal's Office for processing.

17           Do you understand that?

18           THE DEFENDANT:  I understand, Your Honor.

19           THE COURT:  All right.  Now, as I stated, we'll go

20   forward with the plea, but I want to again advise you that

21   the information has been filed against you in this case.

22   And before I go forward with the plea, I want to explain to

23   you that an information is different from an indictment.

24   And as we discussed earlier in this hearing, you've had a

25   waiver of indictment filed in your case and I want to give

1   you the distinctions between an indictment and an

2   information.

3            You have the constitutional right to be charged in

4   your case by way of an indictment.  An indictment is a

5   formal charge that is presented to a grand jury for their

6   consideration of probable cause as to whether a crime has

7   been committed and you are the person who has committed the

8   crime.

9            A grand jury is a group of people consisting of

10  between 16 and 23 persons who meet in secrecy to determine

11  the issue of probable cause.  They consider evidence

12  presented to it for its consideration.  At least 12 members

13  of the grand jury have to concur in the finding of probable

14  cause in order to return an indictment.

15           An information, on the other hand, is just a

16  formal accusation that's been filed by the government

17  against you.  The information has not been presented to the

18  grand jury for its consideration of probable cause.

19  Therefore, in order for your case to go forward on the

20  information, you would have to waive your right to be

21  charged by way of an indictment.

22           Having stated that, do you feel that you

23  understand the difference between an information and an

24  indictment?

25           THE DEFENDANT:  I do, Your Honor.

1          THE COURT:  And do you understand that you have a

2    constitutional right to be charged by way of an indictment?

3          THE DEFENDANT:  I do, Your Honor.

4          THE COURT:  Do you wish to waive that right and

5    allow your case to proceed on the information in this case?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Has anyone forced you or threatened

8    you in any way in order for you to waive that right?

9          THE DEFENDANT:  No, Your Honor.

10          THE COURT:  Has anyone promised you anything of

11    value in order for you to waive that right?

12          THE DEFENDANT:  No, Your Honor.

13          THE COURT:  All right.  Again, if the parties file

14    the supplemental waiver of indictment, I'll execute that

15    waiver, but I'll allow the case -- for purposes of the

16    record, allow the case based upon Mr. Cordero's waiver of

17    the indictment to proceed on the information as filed.

18          All right.  Sir, I'm going to ask you a number of

19    question throughout this hearing.  It's important that you

20    understand each and every one of my questions.  Therefore,

21    if you do not understand something, I want you to feel free

22    to interrupt me so I can explain it to you further.

23          Also, if you have any questions for Mr. Tanenbaum

24    during the process, just let me know and I'll pause the

25    proceeding to give you all the time that you need.

1          Do you understand that, sir?

2          THE DEFENDANT:  I do, Your Honor.

3          THE COURT:  All right.  Before we begin, I'm going

4   to ask Pretrial if they want to collect their reports.

5   There's no need for Pretrial to stick around.

6          PROBATION OFFICER:  Thank you, Your Honor.

7          THE COURT:  Yes, sir.

8          PROBATION OFFICER:  (Complies).

9          THE COURT:  All right.  Thank you.

10         All right.  I'm sorry.  In a moment I'm going to

11  ask my courtroom deputy to put you under oath.  I tell you

12  that because it's important that you understand the

13  consequences of the oath.  If in responding to my questions

14  you should provide any false or misleading answers, you

15  could be charged with additional crimes, such as the crime

16  of perjury.  Those crimes would carry additional penalties

17  beyond any penalties you are facing in this case.

18         Do you understand that?

19         THE DEFENDANT:  I do, Your Honor.

20         THE COURT:  All right.  Madam Deputy.

21         (Defendant sworn by the Deputy Clerk.)

22         THE DEFENDANT:  I do.

23         THE DEPUTY CLERK:  Thank you.  Have a seat.

24         THE DEFENDANT:  (Complies.)

25         THE DEPUTY CLERK:  I'll ask you to please state

1    your name, please, for the record.

2              THE DEFENDANT:  Jose Miguel Cordero.

3              THE DEPUTY CLERK:  Thank you.

4              THE COURT:  All right.  Mr. Cordero, I want to

5    just remind you that if you do decide to enter a plea of

6    guilt at the end of this hearing and your plea is accepted

7    by the Court, it will become very difficult, if not

8    impossible, for you later to change your mind.

9              Do you understand that?

10             THE DEFENDANT:  I understand, Your Honor.

11             THE COURT:  All right, sir.  I have to ask you

12   some questions you may consider to be personal in nature.

13   Please understand that in no way am I trying to embarrass

14   you.  Rather, the purpose of these questions are for me to

15   determine whether you are competent to enter a plea of

16   guilt.

17             Do you understand that?

18             THE DEFENDANT:  I understand, Your Honor.

19             THE COURT:  How old are you, sir?

20             THE DEFENDANT:  Thirty-two years old, Your Honor.

21             THE COURT:  And how far did you go in school?

22             THE DEFENDANT:  High school diploma.

23             THE COURT:  All right.  Can you read and write in

24   the English language?

25             THE DEFENDANT:  I can, Your Honor.

1          THE COURT:  Did you ever read the charge against

2    you in this information?

3          THE DEFENDANT:  I have, Your Honor.

4          THE COURT:  And did you feel that you understood

5    the charge after reading it?

6          THE DEFENDANT:  I have, Your Honor.

7          THE COURT:  To you knowledge, have you ever

8    suffered from any mental disease or defect of any kind?

9          THE DEFENDANT:  No, Your Honor.

10         THE COURT:  In the past 24 hours, have you taken

11   any drugs or medication of any kind?

12         THE DEFENDANT:  I have not, Your Honor.

13         THE COURT:  Do you understand the purpose of this

14   hearing?

15         THE DEFENDANT:  I do, Your Honor.

16         THE COURT:  And what is it that you want to do at

17   this hearing?

18         THE DEFENDANT:  Enter my plea, Your Honor.

19         THE COURT:  All right.  Thank you, sir.

20         Mr. Tanenbaum, just for the record, any concerns

21   regarding competency in this matter?

22         MR. TANENBAUM:  No, Your Honor.

23         THE COURT:  All right.  Thank you.

24         All right.  Let me just note for the record, based

25   upon Mr. Cordero's responses to my questions, as well as his

1    demeanor, I do find that he is fully competent to proceed to

2    enter a plea of guilt if he chooses to do so.

3            Before I proceed, Mr. Cordero, I also have to

4    inform you that you have the right to have your plea heard

5    by the District Judge assigned to your case.  The District

6    Judge is Mary Scriven.  I'm a Magistrate Judge.  Judge

7    Scriven's authority is different from my authority.  Judge

8    Scriven not only has the authority to conduct your plea

9    hearing, but it is Judge Scriven who will decide whether to

10   accept your plea and adjudicate you guilty.  If you are

11   adjudicated guilty in your case, it would then be Judge

12   Scriven who would impose sentence upon you.  If you decided

13   not to enter a plea of guilt, but rather take your case to

14   trial, it would be Judge Scriven that would preside over

15   that trial.

16           My authority, on the other hand, is limited to

17   only conducting this hearing and determining whether you are

18   entering a plea knowingly and voluntarily.  If I make such a

19   determination, I would then issue a report recommending to

20   Judge Scriven that your plea be accepted.

21           Having stated that, do you feel that you

22   understand the difference between my authority and Judge

23   Scriven's authority?

24           THE DEFENDANT:  I do, Your Honor.

25           THE COURT:  And knowing those differences, do you

1    wish to waive your right to have your plea before Judge

2    Scriven and have your plea before me this afternoon?

3                THE DEFENDANT:  Yes, Your Honor.

4                THE COURT:  Has anyone forced you or threatened

5    you in any way in order for you to waive that right?

6                THE DEFENDANT:  No, Your Honor.

7                THE COURT:  Anyone promised you anything of value

8    in order for you to waive that right?

9                THE DEFENDANT:  No, Your Honor.

10                THE COURT:  All right, sir.  Let me just ask you

11    again, having reviewed the charge with you, do you feel that

12    you understand that charge against you?

13                THE DEFENDANT:  I do, Your Honor.

14                THE COURT:  And has Mr. Tanenbaum answered for you

15    all your questions about the charge?

16                THE DEFENDANT:  He has, Your Honor.

17                THE COURT:  And do you feel you've had a full and

18    fair opportunity to review all the facts and evidence in

19    connection with that charge against you?

20                THE DEFENDANT:  Yes, Your Honor.

21                THE COURT:  Have you discussed with Mr. Tanenbaum

22    all of your options in your case, to specifically include

23    the option to take your case to trial?

24                THE DEFENDANT:  We have, Your Honor.

25                THE COURT:  And after discussing those options,

1   are you satisfied with your decision to plead guilty in this

2   case?

3          THE DEFENDANT:  I am, Your Honor.

4          THE COURT:  Has Mr. Tanenbaum done everything that

5   you asked him to do for you?

6          THE DEFENDANT:  He has, Your Honor.

7          THE COURT:  Do you feel he's done anything in an

8   unsatisfactory manner?

9          THE DEFENDANT:  No, Your Honor.

10          THE COURT:  Are you fully satisfied with the

11   advice and representation you have received in this case?

12          THE DEFENDANT:  I am, Your Honor.

13          THE COURT:  All right, sir.  I've got a copy of

14   your plea agreement in front of me.  If you can, just let me

15   ask you, are these your initials at the bottom of each of

16   the pages and your signature on the last page?

17          THE DEFENDANT:  They are, Your Honor.

18          THE COURT:  Do your initials on each of the pages

19   and your signature on the last page indicate that you

20   reviewed this plea agreement in its entirety in consultation

21   with Mr. Tanenbaum?

22          THE DEFENDANT:  That is correct, Your Honor.

23          THE COURT:  And has he answered for you all your

24   questions about the plea agreement?

25          THE DEFENDANT:  Yes, he has, Your Honor.

1          THE COURT:  All right.  Mr. Cordero, what I intend

2    to do is discuss with you a number of these provisions in

3    some detail.  I'm not going to cover each and every

4    provision in detail, but that's not to say that I think one

5    provision is more important than another.  If you have any

6    questions about any of the provisions, just let me know and

7    we'll discuss them further.

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Do you understand that?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  All right.  So in looking at page one,

12   paragraph A1, that provision simply memorializes that you

13   agree to enter a plea to Count One of the information, as we

14   discussed, which charges you with accessing with intent to

15   view child pornography, alleged to be in violation of

16   Title 18, United States Code, Section 2252(a)(4)(B).

17         Sir, is that the charge you've agreed to enter a

18   plea of guilt to?

19         THE DEFENDANT:  That's correct, Your Honor.

20         THE COURT:  All right.  If we go then to page

21   three and look at paragraph A5, by this provision, in return

22   for your agreement to plead guilty to Count One of the

23   information, the United States Attorney's Office for the

24   Middle District of Florida has agreed not to charge you with

25   committing any other federal criminal offenses known to that

1    office at the time of the execution of your plea agreement

2    relating to the conduct giving rise to your plea agreement.

3            What that simply means is that if the government

4    at this time is aware of other criminal conduct that you may

5    have been engaged in and that criminal conduct does not

6    relate to the facts giving rise to your plea agreement in

7    this case, the government remains free to charge you with

8    that known, but unrelated, criminal conduct.

9            Do you understand that, sir?

10           THE DEFENDANT:  I understand, Your Honor.

11           THE COURT:  Let me explain to you, Mr. Cordero,

12   that your plea agreement is, in essence, like a contract.

13   It's a contract between you and the United States Attorney's

14   Office here for the Middle District of Florida.  I explain

15   it to you in those terms because it's important you

16   understand that there are no other parties to your plea

17   agreement and, as such, your plea agreement is only binding

18   upon yourself and the United States Attorney for the Middle

19   District of Florida.

20           And specifically, if we jump to page 17 and look

21   at paragraph B6, you are put on notice of this issue.  In

22   that paragraph it reads that it is understood that your plea

23   agreement is limited only to the office of the United States

24   Attorney for the Middle District of Florida and it cannot

25   bind any other federal, state, or local prosecuting

1    authority.

2            Do you understand that, sir?

3            THE DEFENDANT:  I understand, Your Honor.

4            THE COURT:  Do you have any questions about that?

5            THE DEFENDANT:  No, Your Honor.

6            THE COURT:  All right, sir.  There are certain

7    provisions in your plea agreement that have been negotiated

8    on your behalf in an effort to mitigate any potential

9    sentence that you may receive.  If we go back to page three

10   and look at paragraph A6, there is one such provision.

11           By this provision, the United States has agreed to

12   recommend to the Court that you be sentenced within the

13   applicable advisory guideline range as determined by the

14   Court pursuant to the United States Sentencing Guidelines

15   and as adjusted by any departure the United States has

16   agreed to recommend in your plea agreement.

17           So let me explain that to you.  At your sentencing

18   hearing, Judge Scriven is going to be utilizing the United

19   States Sentencing Guidelines to perform a calculation to

20   determine an appropriate advisory guideline range for your

21   case.  This advisory guideline calculation is important to

22   you because the Court will use that range just as that, a

23   guide to determine your sentence.

24           Once the Court has calculated the advisory

25   guideline range appropriate for your case, by this provision

1   in paragraph A6, the United States has agreed to recommend

2   to the Court that you be sentenced within that range; in

3   other words, that the Court not vary upward from that range.

4           Do you understand that?

5           THE DEFENDANT:  I do, Your Honor.

6           THE COURT:  All right.  Now let's go on to the

7   next paragraph, paragraph A7.  By this provision, absent any

8   adverse information which may be received suggesting such a

9   recommendation to be unwarranted, the United States has

10  agreed to recommend to the Court that you receive a two-

11  level downward adjustment in your case based upon your

12  acceptance of responsibility.

13          Additionally, at the time of sentencing, if it is

14  applicable, the United States has agreed to file a motion

15  with the Court requesting an additional one-level downward

16  adjustment based upon your acceptance of responsibility.

17          So simply stated, when the Court is conducting the

18  advisory guideline range calculation in your case, by this

19  provision in paragraph A7, there's a total potential for a

20  three-level downward adjustment in that range based upon

21  your acceptance of responsibility in your case.

22          Do you understand that?

23          THE DEFENDANT:  I do, Your Honor.

24          THE COURT:  All right.  Then we'll move on to page

25  four and look at the next provision, paragraph A8.  Again,

1  by this provision, absent any adverse information which may

2  be received suggesting such a recommendation to be

3  unwarranted, the United States has agreed to recommend to

4  the Court that you receive a sentence at the low end of the

5  applicable advisory guideline range.

6          So simply stated, once the Court has finished

7  calculating the advisory guideline range, the government is

8  going to recommend to the Court then that you be sentenced

9  at the low end of that range.

10          Do you understand that?

11          THE DEFENDANT:  I understand, Your Honor.

12          THE COURT:  I want to remind you of what we

13  discussed a moment ago, which is that your plea agreement is

14  only binding upon yourself and the United States Attorney

15  for the Middle District of Florida.  I remind you of that

16  because it's important you understand that the Court is not

17  a party to your plea agreement and, as such, the Court

18  cannot be bound by any of the provisions of your plea

19  agreement.  So simply stated, the Court does not have to

20  follow any provisions.

21          And if we look at page 16, paragraph B4, you are

22  put on notice of this issue in the middle of that paragraph.

23  In summary, it reads that you further understand and

24  acknowledge that any discussions between you or your

25  attorney and the attorney or other agents for the government

1    regarding any recommendations by the government are not

2    binding on the Court and that should any recommendations be

3    rejected, you will not be permitted to withdraw from your

4    plea pursuant to the plea agreement.

5              Do you understand that, sir?

6              THE DEFENDANT:  I do, Your Honor.

7              THE COURT:  Do you have any questions about that?

8              THE DEFENDANT:  No, Your Honor.

9              THE COURT:  All right.  Now let's go back in your

10   plea agreement starting on page five and continuing on

11   through page nine in paragraphs A9 through A11.  There are

12   certain provisions there that deal with any potential

13   cooperation that you may provide to the government.

14             Mr. Cordero, it's not my intent to discuss with

15   you each of these provisions unless you have a specific

16   question.  I do want to highlight for you, though, the last

17   sentence of paragraph A9, which is on page six of your plea

18   agreement.  That sentence reads that in any case, you

19   understand that the determination as to whether substantial

20   assistance has been provided or what type of motion related

21   thereto will be filed, if any, rests solely with the United

22   States Attorney for the Middle District of Florida and you

23   agree that you cannot and will not challenge that

24   determination whether by appeal, collateral attack, or

25   otherwise.

1          So let me explain that to you.  If you do decide

2    to cooperate with the government and you feel your

3    cooperation is worthy of a motion for a reduction in your

4    sentence, but the government disagrees with your assessment

5    and does not file such a motion, you cannot later complain

6    and ask to withdraw from your plea of guilt.

7          Additionally, as we discussed a moment ago,

8    nothing in your plea agreement is binding upon the Court.

9    So in the event that you do cooperate with the government

10   and the government does file a motion on your behalf seeking

11   a reduction in your sentence, the Court does not have to

12   grant the motion and, if the Court does not grant the

13   motion, you cannot later complain and ask to withdraw from

14   your plea of guilt.

15         Do you understand that, sir?

16         THE DEFENDANT:  I do, Your Honor.

17         THE COURT:  All right.  Mr. Cordero, it's very

18   important you understand that absent your plea agreement in

19   this case you have the constitutional right to appeal any

20   sentence that you receive.  However, by a specific provision

21   on page 17, paragraph B5, in your plea agreement, you've

22   expressly waived your right to appeal your sentence unless

23   certain events occur.  Those events include:

24         One, the ground that the sentence exceeds the

25   applicable guideline range as calculated by the Court

1    pursuant to the United States Sentencing Guidelines;

2              Two, the ground that the sentence exceeds the

3    statutory maximum penalty;

4              Three, the ground that the sentence violates the

5    Eighth Amendment to the Constitution, which is cruel or

6    unusual punishment; or,

7              Four, in the event that the government files an

8    appeal in your case, you would then be free from this waiver

9    and you could file an appeal.

10             Do you have any questions about this provision of

11   your plea agreement?

12             THE DEFENDANT:  I do not, Your Honor.

13             THE COURT:  Has anyone forced you or threatened

14   you in any way in order for you to waive your right to

15   appeal?

16             THE DEFENDANT:  No, Your Honor.

17             THE COURT:  Anyone promised you anything of value

18   other than what's contained in your plea agreement in order

19   for you to waive that right?

20             THE DEFENDANT:  No, Your Honor.

21             THE COURT:  Let me just ask you in general as to

22   your decision to plead guilty, has anyone forced you or

23   threatened you in any way or anyone you may know, for that

24   matter, in order to induce you to plead guilty?

25             THE DEFENDANT:  No, Your Honor.

```
 1              THE COURT:  Other than what's in your plea
 2    agreement, has anyone promised you anything of value in
 3    order to induce you to plead guilty?
 4              THE DEFENDANT:  No, Your Honor.
 5              THE COURT:  Mr. Tanenbaum, are you aware of any
 6    outside promises in this matter?
 7              MR. TANENBAUM:  No, Your Honor.
 8              THE COURT:  All right.  Ms. Harris?
 9              MS. HARRIS:  No, Your Honor.
10              THE COURT:  All right.  Mr. Cordero, there may be
11    collateral consequences to your plea in this case.  Those
12    consequences will include the loss of valuable civil rights,
13    such as the right to vote, the right to hold public office,
14    the right to serve on a jury, and the right to possess a
15    firearm of any kind.
16              Do you understand, sir, that by pleading guilty in
17    this case you will lose those valuable civil rights as I've
18    just described them?
19              THE DEFENDANT:  I do, Your Honor.
20              THE COURT:  All right, sir.  Let me explain to
21    you, then, the essential -- or, excuse me, the maximum
22    penalties associated with Count One of the information.
23    Those penalties are outlined in paragraph A2 starting on
24    page one of the plea agreement.
25              Count One carries a maximum sentence of ten years
```

1   imprisonment, a fine of $250,000, a term of supervised

2   release of at least five years, and a special assessment of

3   $100, which will be due on the date of sentencing.

4          Having stated that, sir, do you feel that you

5   understand the penalties associated with Count One of the

6   information?

7          THE DEFENDANT:  I do, Your Honor.

8          THE COURT:  Let me explain to you what a term of

9   supervised release is.  If you go to jail in your case,

10  after you are released from jail the Court will place you on

11  a term of supervised release, in that the Court will place

12  upon you certain conditions or restrictions on your

13  liberties.  If you violate any of the Court's conditions

14  while on supervised release, the Court, after conducting a

15  hearing, can order you back to jail for an additional period

16  of time.

17         Having stated that, do you feel that you

18  understand the potential consequence for a violation of

19  supervised release?

20         THE DEFENDANT:  I do, Your Honor.

21         THE COURT:  I have to also explain to you that

22  parole has been abolished and, as such, if you are sent to

23  jail in your case, whatever term of imprisonment you

24  receive, you will serve all that time in jail and not be

25  released on early parole.

```
 1              Do you understand that?
 2              THE DEFENDANT:  I do, Your Honor.
 3              THE COURT:  Is there any applicable restitution in
 4    this matter?
 5              MS. HARRIS:  No, Your Honor, not that -- I don't
 6    believe that any victims have submitted any restitution
 7    packets.  I don't think it's applicable at this time.
 8              THE COURT:  All right.  Thank you.
 9              All right.  Mr. Cordero, let me draw your
10    attention to page nine, paragraph A9, which is entitled
11    Forfeiture of Assets.  By this provision, you've agreed to
12    forfeit to the United States immediately and voluntarily any
13    and all assets or property which are subject to forfeiture.
14              Property that is subject to forfeiture typically
15    comes in one of two ways:
16              First, any property that was utilized during the
17    offense that you are pleading guilty to; or,
18              Second, any property that was gained as a result
19    of the offense that you are pleading guilty to.
20              Specifically, you've agreed to forfeit the HP
21    laptop with the serial number listed in this provision.
22              Do you understand that by this agreement, you've
23    agreed to forfeit any ownership interest you have in that
24    laptop?
25              THE DEFENDANT:  I do, Your Honor.
```

34

```
 1              THE COURT:  Do you have any questions about
 2    forfeiture of assets, sir?
 3              THE DEFENDANT:  I do not, Your Honor.
 4              THE COURT:  Have you discussed the United States
 5    Sentencing Guidelines with Mr. Tanenbaum and how they might
 6    apply in your case?
 7              THE DEFENDANT:  I have, Your Honor.
 8              THE COURT:  All right.  Not only is that perfectly
 9    acceptable, but it's anticipated that you would do that.
10    However, I have to advise you and it's important you
11    understand that no one at this time can tell you with any
12    certainty what your advisory guideline range will be.  That
13    cannot be done for a number of reasons.
14              One specific reason is because the United States
15    Probation Office has to prepare an important document called
16    a presentence investigative report.  This is an important
17    document because the Court will use it as an aid to
18    determine your sentence.  You will have an opportunity to
19    review the report prior to your sentencing hearing in
20    consultation with Mr. Tanenbaum and you will be allowed to
21    make any objections to the report that you deem necessary.
22    The government will have the same opportunity.
23              If your objections go unresolved prior to your
24    sentencing hearing, then they will be resolved at your
25    sentencing hearing by the Court.  Therefore, again, I have
```

1  to emphasize to you that no one can tell you at this time

2  with any certainty what your advisory guideline range will

3  be.

4          Do you understand that?

5          THE DEFENDANT:  I understand, Your Honor.

6          THE COURT:  Therefore, even if you've attempted to

7  estimate a potential range for your case in consultation

8  with Mr. Tanenbaum, you need to understand that your

9  estimation could be wrong and, if it is wrong, you cannot

10  later complain and ask to withdraw from your plea of guilt.

11          Do you understand that?

12          THE DEFENDANT:  I understand, Your Honor.

13          THE COURT:  I have to specifically mention to you

14  that the United States Sentencing Guidelines are advisory;

15  that is, they are not binding upon the Court.  So once the

16  Court has determined an appropriate advisory guideline range

17  for your case, the Court does not have to be bound by that

18  range; in other words, in certain circumstances the Court

19  could vary upward from that range or in other circumstances

20  vary below that range.

21          Do you understand that, sir?

22          THE DEFENDANT:  I understand, Your Honor.

23          THE COURT:  Sir, it's very important you

24  understand that by entering a plea of guilt in your case you

25  are giving up very valuable constitutional rights.  Those

1   constitutional rights include your right to persist in a

2   plea of not guilty and take your case to trial.

3          At trial it would be the government who would

4   always bear the burden of proof to establish your guilt as

5   charged beyond a reasonable doubt.

6          At the trial you would be presumed innocent and

7   you would never be required to prove anything at all, to

8   specifically include to prove that you were not guilty.

9          At the trial you would have a jury of 12 persons

10  who would be selected at random from the community and who

11  could not find you guilty unless each and every member of

12  the jury unanimously agreed beyond a reasonable doubt that

13  you had committed each of the essential elements of the

14  charged offense.

15         As we discussed earlier and as you know, you have

16  the right to effective assistance of counsel at all stages

17  in your case and if you could not afford to hire a lawyer,

18  the Court will appoint a lawyer to you at no cost to you to

19  represent you throughout the entirety of the case, which

20  would obviously include the trial.

21         Now, at the trial you have the right to hear and

22  see all the witnesses called by the government against you

23  and the right to confront and cross-examine those witnesses

24  in your defense.

25         Now, again, as I stated, you're never required to

1   prove anything at all at the trial, but if you decided to do

2   so, you have a right to present a defense on your own

3   behalf; that is, to call any witnesses you deem necessary or

4   present any evidence you thought important.

5           If your witnesses would not come to the court

6   voluntarily or if you could not afford to pay for your

7   witnesses, you would have the right to have the Court to

8   order your witnesses to come to the court to testify for you

9   at no cost to you.

10          Additionally, if you decided to do so, you would

11   have the right to testify in your own defense.  But again,

12   sir, as I stated, and it's important you understand that at

13   the trial you would never be required to prove anything at

14   all.  So if you decided not to present a defense, that is to

15   call any witnesses, present any evidence and/or to testify

16   in your own behalf, the jury would be specifically

17   instructed that it could not draw any unfavorable conclusion

18   from your silence.

19          Do you understand, sir, that by entering a plea of

20   guilt in your case you're giving up all these valuable

21   constitutional rights as I've just described them?

22          THE DEFENDANT:  I do, Your Honor.

23          THE COURT:  Do you have any questions about any of

24   those rights?

25          THE DEFENDANT:  No, Your Honor.

1          THE COURT:  Let me also explain to you that if you

2    have any objections as to how the evidence was gathered in

3    your case or as to how the charge was brought against you,

4    you are waiving any objections to those matters by entering

5    a plea of guilt.

6          Do you understand that?

7          THE DEFENDANT:  I do, Your Honor.

8          THE COURT:  All right.  Now let me explain to you

9    the elements for Count One of the information, which is on

10   page two at paragraph A3.  The elements are:

11         First, that you knowingly accessed with the intent

12   to view a visual depiction;

13         Second, that the visual depiction had been mailed,

14   shipped, or transported in interstate commerce by any means,

15   including by computer;

16         Third, the production of the visual depiction

17   involved the use of a minor engaging in sexually explicit

18   conduct;

19         Fourth, the visual depiction was of such conduct;

20   and,

21         Fifth, you had knowledge that the visual depiction

22   involved the use of one or more minors engaged in sexually

23   explicit conduct.

24         Having stated that, sir, do you feel you

25   understand what the government would have to prove as to

1    each of these essential elements in order to establish your

2    guilt beyond a reasonable doubt for Count One of the

3    information?

4              THE DEFENDANT:  I do, Your Honor.

5              THE COURT:  All right, sir.  In a moment, I'm

6    going to ask the prosecutor to tell me the factual basis for

7    each of those essential elements.  I expect the prosecutor's

8    largely going to read from paragraph B9 of your plea

9    agreement, which is on page 19.  You need to listen

10   carefully to these facts, as these facts are not only

11   important to the elements, but these facts could be relied

12   upon by the Court to determine your sentence.

13             All right.  Ms. Harris.

14             MS. HARRIS:  Thank you, Your Honor.

15             If this case were to go to trial, the United

16   States could prove the following facts beyond a reasonable

17   doubt:

18             Between July 13th, 2006, and October 3rd, 2010,

19   Jose Miguel Cordero accessed with the intent to view child

20   pornography and received child pornography via the internet.

21             On July 13th, 2006, December 2nd, 2006,

22   December 21st, 2006, and December 25th, 2006, Cordero made

23   credit card purchases via PayPal for access to a website

24   containing child pornography.

25             Pursuant to a federal search warrant obtained in

1   2010, law enforcement seized a Hewlett-Packard laptop

2   computer, serial number CDN614021R.  A forensic review of

3   the laptop computer revealed at least ten, but less than 150

4   images of child pornography; that is, images of minors

5   engaging in sexually explicit conduct.  The forensic

6   evidence indicated that at least two child pornography files

7   had been downloaded via LimeWire.

8           Cordero admitted on October 3rd, 2010, and again

9   on August 5th, 2011, that he viewed child pornography online

10  and subscribed to a website that offered images of child

11  pornography.  He further admitted that he accessed internet

12  websites with the intent to view the child pornography.

13          THE COURT:  All right.  Thank you, Ms. Harris.

14          All right, sir.  Did you hear the facts as stated

15  by the prosecutor?

16          THE DEFENDANT:  I did, Your Honor.

17          THE COURT:  Do you have any disagreement with any

18  of those facts?

19          THE DEFENDANT:  I do not, Your Honor.

20          THE COURT:  Are those facts true, sir?

21          THE DEFENDANT:  They are, Your Honor.

22          THE COURT:  Mr. Cordero, let me explain to you it

23  makes no difference to the Court whatsoever whether you

24  decide to enter a plea of guilt or decide to go to trial.

25  That important decision is for you and you alone.

1          Do you understand that, sir?

2          THE DEFENDANT:  I understand, Your Honor.

3          THE COURT:  Having stated that, sir, do you feel

4    you are prepared to make that decision today?

5          THE DEFENDANT:  I am, Your Honor.

6          THE COURT:  All right.  Please rise, Mr. Cordero.

7          THE DEFENDANT:  (Complies).

8          THE COURT:  Jose Miguel Cordero, how do you plead

9    to Count One of the information, which charges you with

10   access with intent to view child pornography in violation of

11   Title 18, United States Code, Section 2252(a)(4)(B), guilty

12   or not guilty?

13         THE DEFENDANT:  Guilty, Your Honor.

14         THE COURT:  And are you pleading guilty to this

15   offense because you're in fact guilty of this crime?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  All right.  Thank you, sir.  You may

18   be seated.

19         THE DEFENDANT:  (Complies).

20         THE COURT:  Mr. Tanenbaum, anything you want to

21   put on the record at this time?

22         MR. TANENBAUM:  No, Your Honor.

23         THE COURT:  All right.  Thank you.

24         Ms. Harris, you have any other suggested questions

25   or anything you want on the record?

1            MS. HARRIS:  No, Your Honor.

2            THE COURT:  All right.  Mr. Cordero, before we

3     conclude, then, let me ask you, do you have any questions

4     about anything that we've discussed this afternoon or, for

5     that matter, anything that I did not cover?

6            THE DEFENDANT:  No, Your Honor.

7            THE COURT:  All right.  I'll note for the record

8     that based upon my review of the information in the plea

9     agreement, as well as my discussions with Mr. Cordero and

10    the factual basis as provided by the government, I'm fully

11    satisfied that Mr. Cordero is competent to enter a plea of

12    guilt and that his plea is being entered knowingly,

13    intelligently, and voluntarily and that it is supported by

14    an independent factual basis for each of the essential

15    elements of Count One of the information.

16            Therefore, sir, I'm going to issue a report

17    recommending that your plea be accepted.  You'll have 14

18    days to object to my report.  If you do not object to my

19    report, in all likelihood your plea will be accepted and

20    your case will be scheduled for sentencing.

21            Sentencing typically takes around 70 to 90 days

22    from the date of your plea.  During that interim period, the

23    Probation Office is going to prepare the presentence

24    investigative report.  You will have an opportunity to

25    provide information that will be contained within the

1    report.

2           Specifically, the Probation Office is going to

3    want to conduct an interview with you.  It's your choice

4    whether to participate in that interview.  If you do decide

5    to participate in the interview, you can have Mr. Tanenbaum

6    present for the interview.

7           Do you understand that, sir?

8           THE DEFENDANT:  I do, Your Honor.

9           THE COURT:  All right.  We'll be in recess.  Thank

10   you.

11                    (Proceedings concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   UNITED STATES DISTRICT COURT      )
                                       )
 2   MIDDLE DISTRICT OF FLORIDA        )

 3
                    REPORTER TRANSCRIPT CERTIFICATE
 4

 5        I, Howard W. Jones, Official Court Reporter for
     the United States District Court, Middle District of
 6   Florida, certify, pursuant to Section 753, Title 28, United
     States Code, that the foregoing is a true and correct
 7   transcription of the stenographic notes taken by the
     undersigned in the above-entitled matter (Pages 1 through 43
 8   inclusive) and that the transcript page format is in
     conformance with the regulations of the Judicial Conference
 9   of the United States of America.

10
                              /s      Howard W. Jones
11
                              _____
12                            Howard W. Jones, RPR, FCRR
                              Official Court Reporter
13                            United States District Court
                              Middle District of Florida
14                            Tampa Division
                              Date:  ____/____/_____
15

16

17

18

19

20

21

22

23

24

25
```